# 23-747

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆◆

HUZHOU CHUANGTAI RONGYUAN INVESTMENT MANAGEMENT PARTNERSHIP,
HUZHOU HUIHENGYING EQUITY INVESTMENT PARTNERSHIP, HUZHOU
HUIRONGSHENG EQUITY INVESTMENT PARTNERSHIP,

*Petitioners-Appellees,*

—against—

HUI QIN,

*Respondent-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR RESPONDENT-APPELLANT

AMIAD M. KUSHNER
JENNIFER BLECHER
XINTONG ZHANG
SEIDEN LAW LLP
322 Eighth Avenue, Suite 1200
New York, New York 10001
(646) 766-1914

*Attorneys for Respondent-Appellant*

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................... iii

INTRODUCTION......................................................... 1

STATEMENT OF JURISDICTION ........................................ 7

STATEMENT OF THE ISSUES.......................................... 7

STANDARD OF REVIEW................................................ 7

STATEMENT OF THE CASE............................................. 8

    Commencement of the Arbitration........................................ 8

    The "Building Address" ................................................. 9

    CIETAC's First Attempt to Serve Qin and the Other Respondents..... 10

    Petitioners Provide CIETAC with Alternative Addresses .............. 10

    CIETAC'S Second and Third Attempts to Serve Qin ................... 12

    CIETAC Forms a Panel of Arbitrators and Schedules the Hearing ..... 14

    Qin Learns of the Arbitration........................................... 15

    Qin and Other Respondents Deny that They Received Notice of
        the Arbitration...................................................... 15

    Petitioners Initiate Confirmation Proceedings in the District Court.... 18

    Qin Opposes Confirmation of the Award ............................... 19

    Petitioners' Redaction of the Building Address ......................... 22

    The District Court's Summary Judgment Order and Judgment ........ 23

    Qin Seeks Relief from the Summary Judgment Order and
        Judgment........................................................... 25

    The District Court's Opinion Denying Qin's Rule 60(b) Motion ....... 28

PAGE

ARGUMENT.................................................................30

I.   THE DISTRICT COURT ERRED IN HOLDING THAT QIN
     WAS PROVIDED WITH NOTICE CONSISTENT WITH
     DUE PROCESS ........................................................30

     A.  The District Court Erred in Holding it "Colorable" that a
         Mailing that Was Returned as Undeliverable Satisfies Due
         Process.............................................................35

     B.  The District Court Erred in Holding that Notice to the
         North Alley Address Was Reasonably Calculated to
         Apprise Qin of the Arbitration ...................................39

         1.  The District Court Improperly Relied Upon an
             Untranslated Chinese Language Judgment, Whose
             Content Was Misrepresented by Petitioners and
             Disputed by Qin ..............................................42

         2.  The District Court Incorrectly Found that Other
             Arbitral Respondents Accepted Service at the North
             Alley Address ................................................47

II.  THE JUDGMENT SHOULD BE VACATED BECAUSE QIN
     ESTABLISHED A DEFENSE TO ENFORCEMENT UNDER
     ARTICLE V(1)(b) OF THE CONVENTION .........................49

     A.  The District Court Erred in Requiring Qin to Demonstrate
         That He was Prejudiced by the Deficient Notice ................49

     B.  Qin's Loss of His Rights to Meaningfully Participate in the
         Arbitration, Including in Arbitrator Selection, Was
         Substantially Prejudicial .........................................53

CONCLUSION ...........................................................58

## TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Albtelecom SH.A v. UNIFI Commc'ns, Inc.*,
   2021 WL 1089982 (S.D.N.Y. Mar. 22, 2021) ............................................. 32, 33

*Am. Lecithin Co. v. Rebmann*,
   2017 WL 4402535 (S.D.N.Y. Sept. 30, 2017)......................................................48

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................................34

*Celsus Shipholding Corp. v. Pelayaran Kanaka Dwimitra
   Manunggal*,
   2008 WL 474148 (S.D.N.Y. Feb. 21, 2008)........................................................32

*CEEG (Shanghai) Solar Science & Tech. Co., Ltd v. Lumos LLC*,
   829 F.3d 1201 (10th Cir. 2016).................................................................... 6, 31

*Chambers v. TRM Copy Centers Corp.*,
   43 F.3d 29 (2d Cir.1994)....................................................................................34

*CKR L. LLP v. Anderson Invs. Int'l, LLC*,
   525 F. Supp. 3d 518 (S.D.N.Y. 2021)..................................................... 36, 38, 44

*Cornfield v. Cornfield*,
   156 F. App'x 343 (2d Cir. 2005) .......................................................................34

*Despain v. Salt Lake Area Metro Gang Unit*,
   13 F.3d 1436 (10th Cir. 1994)............................................................................48

*D.H. Blair & Co., Inc. v. Gottdiener*,
   462 F.3d 95 (2d Cir. 2006).................................................................................19

*Duferco International Steel Trading v. T. Klaveness Shipping A/S*,
   333 F.3d 383  (2d Cir. 2003)................................................................................8

*Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*,
   403 F.3d 85 (2d Cir. 2005) .......................................................................... 33, 54

PAGE(S)

*Guang Dong Light Headgear Factory Co., Ltd. v. ACI Int'l, Inc*,
     2005 WL 1118130 (D. Kan. May 10, 2005) ............................... 31, 32, 33, 39, 57

*Herediav Americare, Inc.*,
     2020 WL 3961618 (S.D.N.Y. July 13, 2020), *reconsideration denied*,
     2020 WL 4748295 (S.D.N.Y. Aug. 17, 2020) ...................................................... 42

*Hugs & Kisses, Inc. v. Aguirre*,
     220 F.3d 890 (8th Cir. 2000) ............................................................................... 54

*In Matter of Motors Liquidation Co.*,
     829 F.3d 135 (2d Cir. 2016) ................................................................................ 50

*In re Jafroodi*,
     651 B.R. 13 (Bankr. C.D. Cal. May 8, 2023) ...................................................... 38

*In re Puda Coal Sec. Inc., Litig.*,
     30 F. Supp. 3d 230 (S.D.N.Y. 2014), *aff'd sub nom.*
     *Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016) ..................................... 12

*In re Weems*,
     359 B.R. 919 (Bankr. N.D. Ind. 2007) ................................................................ 39

*Iran Aircraft Indus. v. Avco Corp., Inc.*,
     980 F.2d 141 (2d Cir. 1992) .................................................................... 30, 51, 52

*Johnson v. Killian*,
     680 F.3d 234 (2d Cir. 2012) ................................................................................ 43

*Jones v. Flowers*,
     547 U.S. 220 (2006) ...................................................................................... 36, 37

*Krizek v. Cigna Grp. Ins.*,
     345 F.3d 91 (2d Cir. 2003) .................................................................................. 34

*La Société Nationale pour La Récherche, La Production, Le Transport, La*
     *Transformation et La Commercialisation des Hydrocarbure v. Shaheen Natural*
     *Resources*
     585 F. Supp. 57 (S.D.N.Y.1983), *aff'd,* 733 F.2d 260 (2d Cir.), *cert. denied,* 469
     U.S. 883 (1984). .................................................................................................. 52

iv

PAGE(S)

*La Société Nationale pour La Récherche, La Production, Le Transport, La Transformation et La Commercialisation des Hydrocarbures v. Shaheen Natural Resources,* 585 F. Supp. 57 (S.D.N.Y.1983), *aff'd,* 733 F.2d 260 (2d Cir.), *cert. denied,* 469 U.S. 883 (1984).. ...............................................................................52

*Millers Mut. Fire Ins. Co. v. Pinnacle Underwriters Mgmt. Assocs., Ltd*.,
2002 WL 424579 (N.D. Tex. Mar. 15, 2002) ......................................................34

*Minshall v. Johnston*,
417 P. 3d 957 (Colo. App. Mar. 22, 2018) .........................................................48

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ............................................................................................31

*Pagaduan v. Carnival Corp.*,
830 F. App'x 61 (2d Cir. 2020) ..........................................................................31

*Park v. Carson Min. Hot Springs LLC*,
2010 WL 11685124 (W.D. Wash. Aug. 26, 2010) .............................................48

*Payne v. United States*,
359 F.3d 132 (2d Cir. 2004) ...............................................................................34

*PoolRe Ins. Corp. v. Org. Strategies, Inc.*,
783 F.3d 256 (5th Cir. 2015) ..............................................................................54

*Qingdao Free Trade Zone Genius Int'l Trading Co., Ltd. v. P and S Int'l, Inc.*,
2009 WL 2997184 (D. Or. Sept. 16, 2009) ........................................................31

*Regeda v. City of New York*,
2015 WL 5751117 (E.D.N.Y 2015) ....................................................................42

*Scofield v. Fishback Fin. Corp.*,
2010 WL 2464860 (D.S.D. June 14, 2010) ........................................................48

*Serv. Emps. Int'l Union, Loc. 32BJ v. Coby Grand Concourse, LLC*,
2006 WL 692000 (S.D.N.Y. Mar. 16, 2006) ......................................................54

*Spier v. Calzaturificio Tecnica S.p.A*.,
663 F. Supp. 871 (S.D.N.Y. 1987).....................................................................50

PAGE(S)

*Stef Shipping Corp. v. Norris Grain Co.*,
    209 F. Supp. 249 (S.D.N.Y. 1962)..................................................................54

*Temsa Ulasim Araclari Sanayi v. Ticaret A.S t*,
    2022 WL 3974437 (S.D.N.Y. Sept. 1, 2022).......................................................33

*Terry v. Ashcroft*,
    36 F.3d 128 (2d Cir. 2003).................................................................................43

*Tianjin Port Free Trade Zone Int'l Trade Serv. Co., Ltd.* v. *Tiancheng*
    *Chempharm, Inc.*,
    2018 WL 2436990 (E.D.N.Y. May 30, 2018), *aff'd*,
    771 F. App'x 36 (2d Cir. 2019) .................................................... 44, 45

*Yukos Cap. S.A.R.L. v. OAO Samaraneftegaz*,
    963 F. Supp. 2d 289 (S.D.N.Y. 2013) , *aff'd sub nom.*
    *Yukos Cap. S.A.R.L. v. Samaraneftegaz*, 592 F. App'x 8 (2d Cir. 2014) ..... 36, 51

*Zhong v. U.S. Dep't of Justice,*,
    461 F.3d 101 (2d Cir. 2006), *op. amended and superseded on other grounds*,
    480 F.3d 104 (2d Cir. 2007)................................................................................42

## Treaties, Statutes and Rules

28 U.S.C. § 1291 ...............................................................................................7

28 U.S.C. § 1331 ...............................................................................................7

Federal Rule of Appellate Procedure 3(a) ........................................................7

Federal Rule of Civil Procedure 60(b)........................................................ 4, 7, 25

Convention on the Recognition and Enforcement of Foreign Arbitral Awards of
    June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, Article V(1)(b) ............... 30, 49

Convention on the Recognition and Enforcement of Foreign Arbitral Awards of
    June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, Article V(1)(d) ......... 33, 53, 56

PAGE(S)

**Other Sources**

*Travaux préparatoires*, Summary Records of the United Nations Conference on International Commercial Arbitration, Twenty-third Meeting, E/CONF.26/SR.23, p. 15 ........................................................................50

UNCITRAL New York Convention Guide, Article V(1)(b)...................................50

¶75, 166 Release No. 3936, Release Nos. 34-83088, Aaer-3936, Ap-3-18446. April 23, 2018. *In the Matter of the Dun & Bradstreet Corporation, Respondent*., Fed. Sec. L. Rep. P 75166 ..........................................................................................12

## **INTRODUCTION**

This appeal arises from an approximately $450 million arbitral award issued by the China International Economic and Trade Arbitration Commission ("CIETAC") against Respondent-Appellant Hui Qin ("Qin"), one of the respondents in the arbitration, and confirmed by District Court below.

In "view of the strong policy favoring arbitration," defenses to enforcement of foreign arbitral awards under the New York Convention are (the "Convention") "frequently invoked but rarely successful." *KT Corp. v. ABS Holdings, Ltd.,* 784 F. App'x 21, 25 (2d Cir. 2019). This is one of the rare cases where there are compelling grounds for declining enforcement. Qin was not provided with notice of the arbitral proceedings or appointment of the arbitrators, and as a result was denied his right to participate in the selection of an arbitrator or submit responsive pleadings or counterclaims.

Qin submitted overwhelming evidence to the District Court that the manner in which he was allegedly notified of the arbitration did not satisfy due process. At a minimum, Qin presented material issues of fact concerning the adequacy of that notice, which should have precluded summary judgment.

In 2019, as Petitioners-Appellees ("Petitioners") knew, Qin moved to New York. In March 2020, Petitioners initiated the arbitration in China against Qin and three other respondents. In late May 2020, CIETAC attempted to mail notice of the

arbitration to Qin, but it was returned undelivered. CIETAC then instructed petitioners to conduct "proper inquiries" to identify alternative service addresses. Petitioners unilaterally identified two additional addresses. CIETAC mailed notice to one of these two additional addresses, but that mailing was also returned undelivered.

In or about June 2020, CIETAC sent a third mailing (to the second alternate address provided by Petitioners) that was directed to (1) an individual other than Qin whom Petitioners had no reasonable basis to believe was in contact with Qin, let alone authorized to accept service on his behalf, and (2) an address in Beijing that the individual later testified he did not reside at; in fact, the individual was located over 1,000 miles away from Beijing. Nevertheless, it appears that *someone* took delivery of CIETAC's mailing at this address, although there is no evidence in the record of who that might have been.

Having assumed that Qin had been served, CIETAC directed all further notices be sent to the same third address that had no identifiable relationship to Qin, and in his absence proceeded with arbitrator selection. The deadline to submit responsive pleadings and counterclaims came and went, and a hearing was set for November 12, 2020. It was only by chance that, in late October 2020, Qin learned of the impending hearing, at which time he promptly obtained counsel for himself

as well as to coordinate with the other named respondents (none of whom had yet appeared, because none had actually been provided notice).

In November 2020, Qin's counsel appeared in the arbitration and argued that no notice had been provided and therefore requested (i) that the deadline for respondents to nominate an arbitrator be extended; (ii) an extension of time for respondents to answer the petition and raise counterclaims; and (iii) an adjournment of the hearing to give respondents adequate time to prepare. The panel denied these requests; the only relief granted was a one-month extension of the hearing date, giving Qin and the other respondents mere weeks to prepare for a hearing in a nine-figure dispute. An approximately $450 million award was ultimately issued in favor of the Petitioners.

When Petitioners sought to confirm their award in the District Court, Qin raised defenses under Article V(1)(b) and (1)(d) of the Convention, arguing that he had not received proper notice of the arbitration or appointment of arbitrators. The District Court granted summary judgment to Petitioners and rejected Qin's defenses, finding that, while CIETAC's first two mailings were returned as undeliverable, CIETAC's third mailing satisfied due process requirements because (as the District Court then understood the facts) it was delivered to a notice address identified for Qin in the parties' underlying contract. The third mailing, however, had *not* gone to that address.

3

In fact, that address had been redacted by the Petitioners and was not even in the summary judgment record. It is not surprising that Petitioners redacted it, because they knew that CIETAC's attempt to mail notice to that address failed. As CIETAC stated in its award, CIETAC's mailing was returned undelivered. Yet, in the first of several extraordinary errors, the District Court held that CIETAC successfully served Qin at that address.

After Qin moved under Rule 60(b) for reconsideration, the District Court conceded that there was a "factual error in its original Opinion" concerning a "critical fact," *i.e.*, Qin's notice address in the underlying agreement. The District Court admonished Petitioners for redacting the address, stating: "The Court does not appreciate that this critical fact was redacted in Petitioners' original submissions." *see infra* at 28.

Nevertheless, without conducting any hearing concerning the numerous material issues of fact surrounding the manner in which Qin was allegedly notified of the arbitration, the District Court left undisturbed its decision to confirm the award. The District Court's opinion on reconsideration contains multiple errors of law and fact.

Preliminarily, on reconsideration, the District Court held for the first time that it was "colorable" that CIETAC's initial mailing to Qin could have satisfied due process, even though it was returned undeliverable. This holding is wrong as a

matter of law, in light of controlling U.S. Supreme Court authority holding that a mailing which is returned as undeliverable cannot satisfy due process.

The District Court also erred in adopting Petitioners' entirely new argument regarding why notice to the third address was reasonably calculated to apprise Qin of the arbitration. Petitioners claimed that this address was contained in an untranslated, Chinese-language default judgment against another respondent in the arbitration. This was false. As Qin informed the District Court, he was not even a party to the action which led to the default judgment, and his name appeared nowhere in the Chinese judgment (nor did the name of the person that the mailing to the third address was addressed to). Qin also cited authority holding that a foreign language document unaccompanied by a certified translation is inadmissible. Yet the District Court relied on the untranslated judgment and proceeded to adopt Petitioners' false assertions regarding the judgment wholesale.

The District Court also erred as a matter of law in finding that Qin was not prejudiced as a result of the notice defects he identified.

As an initial matter, there is no prejudice requirement in the text of Article V(1)(b) of the Convention, which is written in the disjunctive and identifies non-receipt of notice of the arbitration or notice of the selection of arbitrators as independent grounds for denial of confirmation, independent of the ability to present

5

one's case. Indeed, it remains an open question in this Circuit whether prejudice must be shown in the case of a procedural due process violation.

Even if there were such a requirement, the record shows that Qin was prejudiced. Due to defective notice, he missed the deadline to submit a responsive pleading, assert counterclaims, and select an arbitrator.

Numerous federal courts (including this Circuit) have declined to enforce arbitral awards under the Convention where procedural defects compromised a party's right to nominate arbitrators or the process by which arbitrators are selected. Most relevant here, deprivation of the right to select an arbitrator is substantial prejudice. As the 10th Circuit has explained, an improperly-composed panel is a defense to enforcement under the Convention, and "[h]indering the right to participate in the panel-selection process is not a minor procedural misstep. The arbitral tribunal determines the parties' rights with virtually no possibility of appeal or review," and being denied that ability "itself evidences substantial prejudice." *See CEEG (Shanghai) Solar Science & Tech. Co., Ltd v. Lumos LLC*, 829 F.3d 1201, 1207 (10th Cir. 2016).

The same principles apply here: due to deficient notice, Qin was deprived of the right to participate in arbitrator selection.

For these reasons and as discussed further below, the District Court's decision should be reversed and the judgment vacated.

## STATEMENT OF JURISDICTION

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Convention, a treaty of the United States. This Court has appellate jurisdiction under 28 U.S.C. § 1291 because the appeal is from the District Court's final judgment, entered on October 11, 2022. This appeal is timely because the Notice of Appeal was filed on April 28, 2023 (A-1461-62), which is within 28 days after the District Court denied Qin's motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, which sought relief from that judgment. A-1446-60; *see* Fed. R. App. P. 3(a).

## STATEMENT OF THE ISSUES

1.    Whether the District Court erred in holding that Respondent-Appellant had not established a defense to enforcement of the Award under Article V(1)(b) of the Convention based upon Respondent-Appellant's contentions that he was not given proper notice of the arbitration proceedings or the appointment of the arbitrator.

2.    Whether the District Court erred in holding that Respondent-Appellant had not established that he was prejudiced by any due process failure related to notice of the arbitration proceedings or the appointment of the arbitrator.

## STANDARD OF REVIEW

A district court's decision to confirm an arbitration award is reviewed *de novo* "to the extent it turns on legal questions," and any findings of fact are reviewed for

"clear error." *Duferco International Steel Trading v. T. Klaveness Shipping A/S,* 333 F.3d 383, 388 (2d Cir. 2003).

## STATEMENT OF THE CASE

### Commencement of the Arbitration

On March 30, 2020, Petitioners commenced an arbitration (the "Arbitration") before CIETAC against Qin, Shenzhen SMI Shengdian Cultural and Media Group Co., Ltd. ("Shenzhen SMI"), SMI International Cinemas Limited ("SMI International"), and Run Yun Chengdu Culture Communication Co., Ltd. ("Run Yun") (collectively, the "respondents"). A-366-367.

Petitioners filed the Arbitration pursuant to provisions in two agreements, a Capital Increase Agreement, which provides that "[t]he arbitration tribunal shall be composed of three arbitrators, one arbitrator shall be appointed by either of the parties to the arbitration, and the chief arbitrator shall be appointed by [CIETAC (Beijing)]," A-231 ¶¶14.4, and a Supplemental Agreement, which provided for arbitration of disputes under CIETAC's arbitration rules.[1] Under CIETAC's arbitration rules, the respondents had the right to jointly nominate an arbitrator (and recommend up to five candidates for the principal arbitrator) within 15 days of their receipt of the notice of arbitration. A-443-44, at Art. 27(1), (3), Art. 29(1), (2). If respondents failed to do so within 15 days, CIETAC would select the arbitral panel. A-443-44, at Art. 27(1), (4), Art. 29(3).

---

[1] *See* A-231 (Capital Increase Agreement) ¶¶14.3, 14.4; A-355 (Supplemental Agreement) ¶14.2.

Qin was not a party to the Capital Increase Agreement. Qin signed the Supplemental Agreement in his capacity as SMI International's controlling shareholder. *See* A-342-357.

**The "Building Address"**

Article 12 of the Supplemental Agreement provides in relevant part:

> **Article 12 Notification and Service**
>
> 12.1 The parties to the agreement agree that any notice related to this Agreement shall be valid only if it is delivered in writing. Written forms include but are not limited to: Fax, express delivery, mail and e-mail. The above notices shall be deemed to have been delivered at the following time: When sent by fax, on the date when the fax is successfully sent and received by the recipient; when sent by express or by special person, on the day when the recipient receives the notice; when sent by registered mail, 7 working days after sending; when sent by e-mail, after the e-mail is successfully sent.
>
> 12.2 The notices shall be deemed as effectively served if they are delivered to the following places or sent to the following fax numbers or e-mail addresses: [ …]
>
> **Actual controller:**
> Party D: Qin Hui
> Address: [hw:[2]] 18B, 14F, Building 1, Beili, Yijingyuan, Chaoyang District, Beijing.

A-1283-84 at Art. 12.2.

---

[2] The reference to "hw" (which appears only in the English translation) is an abbreviation for "handwritten."

9

Petitioners *redacted* all references to the above address (the "Building Address") in their summary judgment papers, including the reference to the Building Address in the Supplemental Agreement and the references to the Building Address in the Award. *See infra* at 4; *see also* A-135-199 and A-342-357 *comparing* A-1188-1252 and A-1272-1287.

## CIETAC's First Attempt to Serve Qin and other Respondents

On May 26, 2020, CIETAC sent the notice of arbitration to Qin and the other three respondents via "express delivery." A-1190-91. According to the Award, while this mailing was successfully delivered to one of the respondents (Shenzhen SMI, which later disputed this fact (A-922, A-949)), the mailings to Qin and the other two respondents (SMI International and Run Yun) were "returned by postal services." A-1191.[3]

## Petitioners Provide CIETAC With Alternative Addresses

Given that the mailings to Qin and two other respondents were returned as undelivered, on June 9 and June 15, 2020, CIETAC requested that Petitioners "reasonably inquire about the valid correspondence addresses" for these respondents. A-1191. In response, on June 12 and June 16, 2020, Petitioners

---

[3] As the District Court noted (correctly) in its summary judgment opinion, "[i]t is not clear from the record where CIETAC sent this initial mailing" to Qin. A-1046 at n.3.

submitted "Letters of Confirmation" to CIETAC which contained alternative addresses for these three respondents (Qin, SMI International and Run Yun). *Id*.

As recounted in the Award, Petitioners' Letters of Confirmation "confirmed that the address for service of [Qin]" was one of the following two alternative addresses (the "North Alley Address" and "Jiangtai Road Address," respectively):

> Peng Yun
> 9 Xiangjun North Alley
> Hujialou Street
> Chaoyang District
> Beijing
>
> Qin Hui
> Rooms 2015/2016
> Floors 18-19
> Tower B, No. 2
> Jiangtai Road
> Chaoyang District, Beijing

*See* A-138; *see also* A-1191.[4] Peng Yun and the North Alley Address were also identified by Petitioners as the proper address for SMI International and Run Yun. A-1191.

The "Letters of Confirmation" that Petitioners sent to CIETAC were never disclosed to Qin and were never filed in the District Court. Further, the North Alley Address is <u>not</u> the address attributed to Qin in the Supplemental Agreement, *see* A-1283-84 at Art. 12.2, nor was it Peng Yun's address. A-1305-06. Peng lives in

---

[4] In the copy of the Award Petitioners submitted on summary judgment, the Jiangtai Road address was redacted. An unredacted version of the Award was submitted at A-1188-1252.

Chengdu, which is over 1,000 miles from Beijing. A-1305. Peng had formerly been a legal representative for Run Yun, but was terminated in January 2018, long before commencement of the arbitration proceedings. A-1304. In China, a company's legal representative must be identified to the SAIC, a government entity which administers company registration and issues business licenses. *See In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 239 (S.D.N.Y. 2014), *aff'd sub nom. Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016). SAIC maintains a public database that identifies a company's legal representative. ¶75, 166 Release No. 3936, Release Nos. 34-83088, Aaer-3936, Ap-3-18446. April 23, 2018. *In the Matter of the Dun & Bradstreet Corporation, Respondent.*, Fed. Sec. L. Rep. P 75166. As such, it was a matter of public record in China that Peng was no longer serving as Run Yun's legal representative, and there is no indication in the record that Petitioners verified this before submitting the third address.

**CIETAC's Second and Third Attempts to Serve Qin**

In or about late June 2020, CIETAC made two additional attempts to serve Qin with the notice of arbitration by sending notice to each of the two alternative addresses provided by Petitioners. In CIETAC's second attempt (at the Jiangtai Road address), the documents sent to Qin "were returned again." *See* A-1191. The Award states that CIETAC's "third attempt" to serve Qin (via a mailing addressed

to Peng Yun at the North Alley Address) was "successful," but it does not say whether any person accepted delivery at this address or identify any such person. *Id*.

According to the Award, CIETAC also successfully delivered notice to SMI International and Run Yun at the North Alley Address. *See id*.

On July 21, 2020, CIETAC sent a written communication to all parties which recounted CIETAC's three attempts to serve Qin and the other respondents. A-1012. The communication indicated that on May 26, 2020, CIETAC first attempted to serve Qin by express mail at an address provided in Petitioners' notice of arbitration,[5] but that the mailing was "returned by the Post Office." *Id*. The communication further recounted that in June 2020, Petitioners provided CIETAC with two alternative addresses for Qin. *Id*. The communication said that a mailing directed to Qin at one of these alternative addresses was "returned," but that a mailing to the North Alley Address was "delivered." A-1013. The communication did not say who accepted delivery at the North Alley Address. The communication indicated that henceforth, all arbitration papers would be sent to Qin, SMI International and Run Yun at the North Alley Address. *Id*. The communication invited the parties to submit any objections to the method of service. *Id*.

CIETAC received no response to its July 21, 2020 communication. A-1191.

---

[5] The July 21, 2020 communication did not identify this address.

13

Under CIETAC rules, the respondents had the right to jointly nominate an arbitrator (and recommend up to five candidates for the principal arbitrator) within fifteen days of their receipt of the notice of arbitration; if they failed to do, CIETAC would select the arbitrator. Thus, for example, under CIETAC rules, if Qin and the other respondents were validly served by June 30, 2020, they were required to jointly designate an arbitrator by July 15, 2020.

**CIETAC Forms a Panel of Arbitrators and Schedules the Hearing**

On August 24, 2020, CIETAC selected three arbitrators after the respondents "failed to reach a consensus on the selection of arbitrators." A-1192. On the same date, CIETAC mailed a "Notice of Arbitration Panel Formation" to the parties. *Id*.

However, as of August 24, 2020, none of the respondents had appeared. Although the Award states that notice of the arbitration was provided to all respondents as of that date, the Award does not cite any evidence that *any* of the respondents actually knew of the arbitration as of that date.

On August 24, 2020, among other arbitration materials, CIETAC sent a "Notice of Procedures" to all parties which requested respondents to submit written pleadings together with evidentiary materials and counterclaims (if any) by September 14, 2020. A-1192.

In late September 2020, one of the three arbitrators resigned. *Id*. CIETAC selected a replacement arbitrator. *Id*. On October 20, 2020, CIETAC notified all

14

parties regarding the replacement arbitrator and set a hearing for November 12, 2020. *Id*.

## Qin Learns of the Arbitration

As stated in his sworn Declaration, Qin became a permanent resident of the United States in 2019. A-910-11 ¶27. Qin stated that Petitioners knew he was living in the United States with his family since 2019 because he had regular phone contact with the top executives at Petitioners' parent company, a contention unrebutted by Petitioners. *Id*.

Qin averred that he "first found out about the arbitration proceeding in or around late October 2020" from a former executive at Petitioners' parent company. A-912 ¶35. In early November 2020, Qin retained counsel to represent him in the arbitration. *Id*. ¶36.

## Qin and Other Respondents Deny That They Received Notice of the Arbitration

In a November 10, 2020 letter, counsel for Qin and other respondents informed CIETAC that the respondents had not received the "application for arbitration by the complainant, nor the related evidence," and "[t]herefore, the respondents find it impossible to prepare an answer and attend the hearing." A-922. Counsel asked CIETAC to resend the notice of arbitration and other papers. *Id*.

In response, on November 11, 2020, CIETAC re-mailed the notice of arbitration and other arbitration materials to respondents and postponed the hearing

to December 22, 2020. *See* A-943; A-1020. According to the Award, this "re-mailing did not represent a process of re-service on the Respondents." A-1192.

On November 13, 2020, Qin (through his counsel) received the notice of arbitration and other arbitration materials for the first time. A-912 ¶39.

On November 26, 2020, Qin and other respondents submitted an application to CIETAC to reset the deadline for the respondents to select an arbitrator, because none of the respondents received the notice of arbitration until November 13, 2020. A-935. The application stated in relevant part:

> The Respondents received on Nov. 13, 2020 from [CIETAC] one copy of the relevant documents, including the notice of arbitration […].
>
> Notwithstanding the statement by [CIETAC], that the relevant documents were sent to the addresses provided by the complainants, **the respondents did not receive the key documents for the case, such as the notice of arbitration**. Furthermore, Second Respondent Mr. Hui Qin has been living in the US since 2019, making it impossible to receive the mailings from [CIETAC]. In view of the above, to ensure that the arbitration commission do a thorough investigation of the facts of the case, for the respondents to obtain the regular time allowed under the rules of arbitration, for the case to have a fair and just arbitration outcome, and **to guarantee the right of the respondents to appoint arbitrators** in accordance with the rules of arbitration and the agreements between the parties of the arbitration, the respondents, therefore, **request to set the date of its receipt of the notice of arbitration, Nov. 13, 2020, as the base for setting the deadlines for the selection of arbitrators**, and the submission of documents.

16

*Id*. (emphasis added).  The application also identified Ning Fei (a lawyer specializing in complex commercial arbitration) as respondents' selected arbitrator, and recommended five candidates for principal arbitrator. *Id.*  In addition, the application objected to the qualifications and experience of CIETAC's appointed arbitrators . *Id*.

On December 11, 2020, CIETAC denied the application in a two-page decision, on the basis that (according to CIETAC) all respondents had been served with the notice of arbitration and failed to jointly select an arbitrator within the prescribed fifteen-day limit. *See* A-942-43.[6]  The decision notably does not explain how or why CIETAC accepted Petitioners' representation that Qin could be served though Peng at the North Alley Address.

On December 21, 2020, respondents submitted a brief to CIETAC entitled "Respondents' Objections to Arbitration Procedural Issues." A-948-53.   In this submission, they contended, *inter alia*, that the "the address provided by [Petitioners] could not guarantee the proper delivery to the respondents of the arbitration notice and documents" and that "respondents in fact did not receive the notices to appoint arbitrators or notice of arbitration." A-948-49.  With respect to Qin, the submission contended in relevant part that:

> The second respondent Mr. Qin Hui has been living in the
> United States since 2019 …

---

[6] In so doing, the panel ignored Qin's co-respondents' contractual right to appoint an arbitrator pursuant to the Capital Increase Agreement.

17

> It should be pointed out in particular that sources open to the public show that the second respondent, Mr. Qin Hui, has had cases in court in the past two years, and has been represented by an attorney in the court proceedings. The complainant chose not to use such public information, nor to contact his legal counsel to verify the address for delivering the materials, but providing an undeliverable address on purpose.

*Id*. The submission further noted that Peng "is a long-term resident of Sichuan, and not located in the aforementioned address of Chaoyang District, Beijing." A-949. The submission once again requested that CIETAC reset the deadline for all respondents to select an arbitrator (and recommend up to five individuals to serve as principal arbitrator). A-953. The request was denied. A-1192.

On December 22, 2020, CIETAC conducted a hearing. A-1193.

On April 22, 2021, CIETAC issued its award against Qin and other respondents. A-1250-51.

## **Petitioners Initiate Confirmation Proceedings in the District Court**

On November 8, 2021, Petitioners initiated this action by filing a petition in the District Court seeking confirmation of the Award against Qin only. A-31-40.

On November 9, 2021, the District Court issued an order stating that because an application to confirm an arbitration award "must be treated as akin to a motion for summary judgment," Petitioners were required to move for confirmation of the Award in the form of a summary judgment motion. A-358-59 (quoting *D.H. Blair & Co., Inc.* v. *Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006)).

18

On December 8, 2021, Petitioners moved for summary judgment seeking confirmation of the Award. *See* A-360-388. In their moving papers, Petitioners contended that Qin was "properly served with notice of the Arbitration and of the formation of the Arbitration Panel," but did not cite any evidence to support this statement other than the text of the Award, which states that (after two attempts to send notice to Qin were returned as undelivered), CIETAC's third attempt to serve Qin — by delivering papers to "Peng Yun" at the North Alley Address — was successful. A-382 ¶22 (citing A-138-39).

## Qin Opposes Confirmation of the Award

On April 5, 2022, Qin opposed Petitioners' motion on numerous grounds, including that the Award was unenforceable under Article V(1)(b) of the Convention because Qin did not receive proper notice of the arbitration or the appointment of the arbitrator. *See* A-417-27. Qin submitted two sworn statements relevant to whether he received adequate notice of the arbitration: (1) an affidavit from Peng (the identified recipient at the North Alley Address) (A-873-81),[7] and (2) a declaration from Qin (A-906-19).

---

[7] Petitioners objected to Peng's affidavit on the basis that it was not in the proper form for a declaration executed outside the United States and because of some discrepancies between the English and Chinese versions of the affidavit. A-979-80. In order to address these issues, Peng executed a Declaration attesting under penalty of perjury to the statements contained in his affidavit and correcting any translation discrepancies. A-1288-1319. This Declaration was later submitted to the District Court together with Qin's Rule 60(b) motion.

In his affidavit, Peng stated that he (i) has resided in Chengdu (which is 1,100 miles from Beijing) for twenty years, (ii) was not present in Beijing in June 2020 when CIETAC sent the notice of arbitration to the North Alley Address, (iii) did not receive the documents that were sent by CIETAC to that address, and (iv) has never been Qin's agent. A-1305-06 ¶¶4-6. Peng acknowledged that he had once worked at a company that was a respondent in the Arbitration, but stated that he had been terminated by that company in 2018. A-1304. Peng referenced a "proof of mailing" from CIETAC's records of the Arbitration concerning the June 2020 delivery to the North Alley Address, and noted that it does not say that he signed or accepted delivery of the package from CIETAC. A-1306. Indeed, CIETAC's "proof of mailing" does not even list a name (or a signature) for who received the package and does not list the address where it was delivered. *See* A-1316 (listing "Beijing" as the delivery address).

In his declaration, Qin stated in relevant part:

> Petitioners knew that I had been living in the United States with my family since 2019 because I had regular phone contact with … the top executives of … parent companies of Petitioners [].

> None of the Respondents maintained any office at the North Alley Address in 2020. Additionally, even if the North Alley address had been in use, which it was not, Mr. Peng Yun was not my agent, and he was never authorized to accept service of process on my behalf … It is my understanding that in or around June 2020, CIETAC attempted to serve me the Notice of Arbitration at the

20

> North Alley Address and the Building Address via postal
> service. I never received the Notice of Arbitration at either
> address because neither was my address.

A-910-11.[8]

On April 19, 2022, Petitioners submitted reply papers in further support of
their motion. A-963-982. Petitioners did not submit any evidence to rebut Qin's
sworn statement that Petitioners knew that he was living in the United States with
his family since 2019 because he had regular phone contact with the top executives
at Petitioners' parent company. Petitioners nevertheless contended that "deference
was due" to CIETAC with respect to the adequacy of notice to Qin, and that CIETAC
had determined that Qin was properly served. A-971-77. Petitioners also contended
that the North Alley Address was "*associated with Qin*,"[9] but did not submit any
evidence to support this contention. Indeed, in their summary judgment papers,
Petitioners provided no evidence that (i) the North Alley Address was Qin's address
or that Qin could be contacted at that address, or (ii) Peng was Qin's agent or was
authorized to accept service on Qin's behalf.

---

[8] Qin also disputed the authenticity of the address in the Supplemental Agreement, noting that it
was handwritten and that he did not write it into the agreement. A-408; A-910 ¶27. Qin also
explained that he had not lived at this address since 2003. *Id.*

[9] A-972 (emphasis added).

21

**Petitioners' Redaction of The Building Address**

In their reply papers, Petitioners contended for the first time (without citing any evidence) that CIETAC also sent notice of the arbitration to Qin at the Building Address, and that such notice was "effective service" upon Qin. *See* A-971-72. The Building Address is the address attributed to Qin in the Supplemental Agreement. However, neither CIETAC (in its Award) nor Petitioners (in their moving papers on summary judgment) had ever suggested that Qin was validly served at the Building Address. Indeed, in their summary judgment papers, Petitioners *redacted* all references to the Building Address, including all references to that address in the Supplemental Agreement and the Award. A-343 and A-354.[10]

In any event, regardless of whether CIETAC ever sent notice to Qin at the Building Address, it is undisputed that no notice was ever successfully *delivered* at that address. Indeed, the Award expressly states that CIETAC's attempts to send notice to Qin at two addresses were returned as undelivered before CIETAC made a third attempt to serve Qin by sending a notice addressed to Peng at the North Alley Address. A-1191-92.

---

[10] After the summary judgment order was issued, the Court ordered Petitioners to produce an unredacted copy of the Supplemental Agreement to Qin's counsel. *See* A-1079-91.

**The District Court's Summary Judgment Order and Judgment**

On September 26, 2022, the District Court issued an Order granting summary judgment to Petitioners. *See* A-1042-69.

In the Order, the Court rejected Qin's arguments that the Award is unenforceable because he did not receive proper notice of the arbitration or the appointment of the arbitrator. The Court reviewed CIETAC's attempts to provide notice to Qin as described in the Award. The District Court found that CIETAC "first mailed notice to Qin on May 26, 2020," but that "[t]hat mailing was returned as undeliverable." A-1046. The District Court noted that "[i]t is not clear from the record where CIETAC sent this initial mailing." *Id.* at n. 3.

The District Court found that, although CIETAC's second attempt to serve Qin was unsuccessful, CIETAC's third attempt to serve Qin complied with due process because it delivered notice to the "North Alley Address," which (as the Court mistakenly understood at the time) "*was specifically attributed to Qin in the Supplemental Agreement*." A-1046 (emphasis added); *see also* A-1059 ("The third time CIETAC attempted to serve Qin, it mailed notice to the North Alley Address, which is *the address attributed to Qin in the Supplemental Agreement*.") (emphasis added).

23

The District Court's (mistaken) assumption was material to its holding that

CIETAC's delivery of notice to that address complied with due process under United

States law. As the District Court explained:

> The third time CIETAC attempted to serve Qin, it mailed notice to the North Alley Address, **which is the address attributed to Qin in the Supplemental Agreement.** CIETAC also verified that the documents were duly served on Qin on that attempt.
>
> Mailing notice to Qin at this address was not unreasonable under the circumstances. Although notice is a fact-specific inquiry, mailing notice to a party's known address is widely accepted as constitutionally sufficient. At least one other Court in this Circuit has found that mailing arbitration documents to **an address listed in the underlying agreement** is sufficient notice under the New York Convention.

A-1059 (citations omitted) (emphasis added).

The District Court's mistake was also material to its holding that Qin was <u>not</u>

denied the right to appoint an arbitrator. As the District Court explained:

> By not nominating an arbitrator within the timeframe contemplated by CIETAC's rules, Qin forfeited his right to do so. The real issue here is not CIETAC's compliance with its own procedures, but rather Qin's alleged failure to receive notice of the pending arbitration. After all, **if Qin did not know about the arbitration in July 2020, he could not have timely selected an arbitrator**. But as explained in section B.2, *supra*, **the Court will not overturn CIETAC's finding that Qin was properly served in June 2020 and could have timely responded to the arbitration notice.**

A-1063 (emphasis added).

24

On October 11, 2022, the District Court entered a final judgment, which confirmed the Award and imposed approximately $450 million in personal liability against Qin. A-1073-75.

**Qin Seeks Relief from the Summary Judgment Order and Judgment**

On November 8, 2022, Qin moved under Rule 60(b) of the Federal Rules of Civil Procedure for relief from the District Court's summary judgment order and judgment. A-1082-1111. Qin argued that reconsideration was required because the District Court committed a material factual error in stating that the North Alley Address was Qin's notice address in the Supplemental Agreement. A-1097-99.

Qin contended that, once the record was corrected to reflect the fact that the North Alley Address was *not* the address in the Supplemental Agreement, CIETAC's delivery of notice to the North Alley Address was defective, in that it failed to comply with principles of due process under United States law (even if, as CIETAC determined, it complied with CIETAC's own rules). *See id*.

Qin contended that Petitioners had offered no evidence indicating that sending notice to "Peng Yun" at the North Alley Address was reasonably calculated to apprise Qin of the arbitration in accordance with U.S. due process principles. A-1101-05. Qin argued that the overwhelming evidence on summary judgment pointed to the contrary. *See id*. For example, Peng submitted a sworn affidavit indicating that he lives over 1,000 miles from the North Alley Address, is not Qin's agent, had

25

ceased serving as legal representative for Run Yan as of January 2018 (a matter of public record) and never received the documents that CIETAC indicated were sent to that address. A-1305-06 ¶¶2-6. There was also no evidence that Qin ever agreed that he could be served through Peng. A-1103. Further, and significantly, Qin submitted a sworn declaration stating that Petitioners knew that at the time they initiated the arbitration that Qin had left China and was residing in New York. A-1102-03; *see also* A-910-11.

Qin further argued that, as a result of the defective notice, he was severely prejudiced because he lost the ability to nominate an arbitrator, to submit responsive pleadings or counterclaims, and to have the appropriate time to prepare his case. A-1106-07.

For all of these reasons, Qin argued that he had established a valid defense to enforcement of the Award under Article V(1)(b) of the Convention, which allows a court to refuse enforcement if "[t]he party against whom the award was invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings []." A-1100-05.

In their opposition to Qin's motion, Petitioners did not contend that Qin ever resided at the North Alley Address or that he actually received the papers that CIETAC addressed to Peng Yun at this address. A-1401-31. Petitioners contended that notice to the North Alley Address complied with due process because of its

26

supposed nexus to *other respondents*: (1) "the North Alley Address was the same location where *other respondents* (affiliated with or controlled by Qin) were served," and (2) a "Chinese Civil Judgment held that the North Alley Address is associated *with SMI*," another respondent in the Arbitration. A-1420 (emphasis added).

In the alternative, Petitioners argued that Qin had been validly served at the Building Address. A-1420.

On reply, Qin argued that Petitioners cited no authority to support their contention that notice to other respondents constitutes notice *to Qin* in a manner that complies with due process under U.S. law. A-1438-41. In any event, the other respondents who were purportedly served at the North Alley Address (SMI International and Run Yun) disputed the propriety of service at that address (A-935-37; A-948-53), and there is no evidence that any of them received actual notice of the Arbitration based upon the delivery to that address. A-922-23. Indeed, none of the Respondents appeared in the Arbitration until November 2020, over four months after service was purportedly made at the North Alley Address. Further, Petitioners *unilaterally* provided CIETAC with the North Alley Address for three respondents (Qin, SMI International and Run Yun) after CIETAC's initial mailing to these respondents was returned (A-138; A-1191); that correspondence was never provided to any respondent and there is no evidence in the record regarding the basis for identifying that address or that any of these respondents consented to be served at

that address, or even that any of them maintained a presence at that address when CIETAC purported to deliver notice to them at that address in June 2020.

Qin further argued that even if CIETAC had attempted to serve Qin at the Building Address, CIETAC's notice was returned undelivered, and thus it could not have complied with due process. A-1441-44.

**The District Court's Order Denying Qin's Rule 60(b) Motion**

On March 31, 2023, the District Court issued an order denying Qin's motion. A-1446-60.

At the outset of its opinion, the District Court stated: "The facts that follow supplement, and in one instance correct, the Court's initial telling of the facts." A-1447. In fact, the District Court made two material changes to its initial telling of the facts.

First, the District Court found that on May 26, 2020, CIETAC mailed a notice of the arbitration to Qin *at the Building Address*. A-1447 (citing A-1011-15). Through this statement, the District Court reversed (without any explanation) its finding in its summary judgment opinion that "[i]t is not clear from the record where CIETAC sent this initial mailing." A-1046 at n. 3.[11]

---

[11] The District Court cited Exhibit 1 to the Supplemental Declaration of Carol Lee (A-1011-15), which is the July 21, 2020 communication from CIETAC that is discussed above. That communication, however, merely provides that on May 26, 2020, CIETAC sent notice to "the four respondents pursuant to the addresses of respondents indicated in Application for Arbitration by claimants," without actually identifying any of these addresses. The record does not contain a certified translation of Petitioners' notice of arbitration.

28

Second, the District Court corrected an error concerning a "critical fact:"

> The Court takes this opportunity to clarify and correct a factual error in its original Opinion. The Supplemental Agreement attributes to Respondent the Building Address, not the North Alley Address. (*See* Supplemental Agreement 1). The Court does not appreciate that this critical fact was redacted in Petitioners' original submissions.

A-1455-56.

While acknowledging the error as to this "critical fact," the Court held that CIETAC's attempts to serve Qin complied with due process principles. A-1452-55.

Preliminarily, the Court found that "[b]ecause the Supplemental Agreement states that service on [Qin] at the Building Address is adequate (Supplemental Agreement § 12.2), and because Respondent never changed or updated his service address for purposes of that agreement, Petitioners' argument that CIETAC's initial mailing of notice to that address alone satisfies due process is colorable." A-1456.

The District Court found that CIETAC's next attempt to mail papers to Qin (at the Jiangtai Road Address) "were returned by the postal service, but CIETAC's mailing to Respondent at the North Alley Address was delivered successfully." A-1449. The District Court found that the notice which was delivered to the North Alley Address complied with due process because:

> Petitioners (and CIETAC) had good reason to believe that [Qin] could be reached at the North Alley address; They understood it be the address attributed to him in a contemporaneous Chinese civil action, and two companies

29

> that he controls — represented by his counsel — accepted
> service there without objection.

A-1457.

The District Court further concluded that Qin "has not shown that he was prejudiced" by any notice defect. A-1459. As the District Court reasoned, "[w]hile a lack of actual notice could explain [Qin's] failure to nominate an arbitrator of his choosing within the timeframe provided by CIETAC rules," Qin was not prejudiced because he "was afforded the opportunity to challenge the adequacy of service and the composition of the arbitral panel multiple times in the underlying arbitration." *Id*.

On April 28, 2023, Qin filed a notice of appeal of the District Court's final judgment, including its order denying his motion for relief from the judgment. A-1461-62.

## **ARGUMENT**

## I. **THE DISTRICT COURT ERRED IN HOLDING THAT QIN WAS PROVIDED WITH NOTICE CONSISTENT WITH DUE PROCESS**

Article V(1)(b) of the Convention allows a court to refuse enforcement of an arbitral award if "[t]he party against whom the award was invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case." Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 21 U.S.T. 2517, 330

U.N.T.S. 38.   Article V(1)(b) "essentially sanctions the application of the forum state's standards of due process." *Iran Aircraft Indus. v. Avco Corp.*, *Inc.*, 980 F.2d 141, 145 (2d Cir. 1992)), which are "entitled to full force under the Convention as defenses to enforcement." *Id.* (quotation and internal citation omitted); *see also Pagaduan v. Carnival Corp.*, 830 F. App'x 61, 62 (2d Cir. 2020).[12]

Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).   Federal courts applying Article V(1)(b) have held foreign arbitral awards unenforceable in the United States where the party against whom enforcement is sought was denied due process or where a genuine issue of material fact existed with respect to whether a party was denied due process. *See, e.g.*, *CEEG (Shanghai) Solar Science & Tech. Co., Ltd v. Lumos LLC*, 829 F.3d 1201, 1207 (10th Cir. 2016) (CIETAC award unenforceable where the "Chinese-language notice" of the arbitration "was not reasonably calculated to apprise [English-speaking respondent] of the proceedings"); *Guang Dong Light Headgear Factory Co., Ltd. v. ACI Int'l, Inc.*, 2005 WL 1118130, at *9 (D. Kan. May 10, 2005) (denying confirmation of CIETAC award where, *inter alia*, the record did not

---

[12] Thus, Qin is not challenging CIETAC's determination that notice complied with *CIETAC rules*, but rather that the notice provided to him violated due process under U.S. law.

31

include documentary evidence of notice of the arbitration); *Qingdao Free Trade Zone Genius Int'l Trading Co., Ltd. v. P and S Int'l, Inc.*, 2009 WL 2997184, at *5 (D. Or. Sept. 16, 2009) (declining to enforce Chinese arbitral award where "the documents and circumstances [*e.g.*, receipt of English-language pamphlets describing arbitration procedures and a list of arbitrators and a Chinese-language document] … do not demonstrate that [respondent] received notice reasonably calculated, under all the circumstances, to apprise [respondent] of the pendency of the arbitration and afford them an opportunity to be heard").

Because an application to confirm a foreign arbitral award is treated as a motion for summary judgment, Petitioners (as the moving party) had the initial burden of showing that there is no genuine issue of material fact, including as to whether notice was proper. *Rodriguez v. City of New York,* 72 F.3d 1051, 1060-61 (2d Cir. 1995) ("The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law."); *Albtelecom SH.A v. UNIFI Commc'ns, Inc.*, 2021 WL 1089982, at *2–3 (S.D.N.Y. Mar. 22, 2021) (stating that, on a motion for summary judgment seeking confirmation of a foreign arbitral award, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"); *Celsus Shipholding Corp. v. Pelayaran Kanaka Dwimitra Manunggal*, 2008 WL 474148, at *3 (S.D.N.Y. Feb.

21, 2008) (on motion to confirm arbitral award, "[a] court 'may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial'"); *Guang Dong*, 2005 WL 1118130 at *12 (denying confirmation where it found a "genuine issue of material fact[] with regard to … whether [respondent] was accorded proper notice").

"The party opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses under the New York Convention applies." *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005). In determining whether one of the Convention's defenses applies, "the Court must view all facts in the light most favorable to the non-moving party." *Albtelecom SH.A¸* 2021 WL 1089982, at *2–3. Further, "[i]n determining whether there are genuine issues of material fact, the Court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Id. See also Temsa Ulasim Araclari Sanayi v. Ticaret A.S.*, 2022 WL 3974437, at *6 (S.D.N.Y. Sept. 1, 2022) (granting motion to confirm arbitral award where "the undisputed facts … show[ed] the absence of any genuine issue of fact that the Award should be confirmed, and nothing in the record suggest[ed] that any of the defenses listed in the Convention or in the FAA would preclude confirmation"); *Guang Dong*, 2005 WL 1118130, at *9; *cf. Encyclopaedia*

33

*Universalis*, 403 F.3d at 87, 89 (affirming denial of confirmation of an arbitral award where *"[t]he relevant facts [were] undisputed,"* and the evidence showed that the arbitral panel "was improperly composed under Article V(1)(d) of the Convention") (emphasis added).[13]

Here, the record does not support a finding that any of CIETAC's attempts to notify Qin complied with due process.  The District Court's decision to the contrary was wrong as a matter of law or (to the extent based on factual findings) clear error. *See Cornfield v. Cornfield*, 156 F. App'x 343, 344 (2d Cir. 2005) (clear error where "challenged findings lack support in the record.") (citing *Payne v. United States*, 359 F.3d 132, 134 (2d Cir. 2004)); *see also Krizek v. Cigna Grp. Ins.*, 345 F.3d 91, 100 (2d Cir. 2003) ("the [district] court may only draw permissible inferences, which requires at a minimum some evidentiary basis in the record to support the inference").

At a minimum, Qin raised material issues of fact which should have precluded summary judgment in favor of Petitioners.

---

[13] *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (on summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor"); *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994) (If the court finds "any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party," then summary judgment should be denied).

**A. The District Court Erred in Holding it "Colorable" that a Mailing that Was Returned as Undeliverable Satisfies Due Process**

In its original opinion, the District Court acknowledged that the first two mailings to Qin were returned undelivered, and thus premised its finding that service was "constitutionally sufficient" solely on the third, presumably delivered, mailing to an address the Court mistakenly believed had been identified as Qin's address in the Supplemental Agreement. A-1059. Upon learning that the third address was in fact not the address in the Supplemental Agreement, the District Court engaged in revisionist history, stating in its revised opinion that it previously "found CIETAC's *three* attempts to mail service to Respondent to be constitutionally adequate, particularly because the third mailing was sent to the North Alley Address, which is the address attributed to [Respondent] on the Supplemental Agreement." A-1454 (internal quotations removed and emphasis added). There was no such finding in the original opinion. The District Court nevertheless proceeded to retroactively justify the first mailing on its own merits. *Id*.

With respect to the first attempt (identified by the District Court as having occurred at the Building Address), the District Court held that, "[b]ecause the Supplemental Agreement states that service on Respondent at the Building Address is adequate (Supplemental Agreement § 12.2), and because Respondent never changed or updated his service address for purposes of that agreement, Petitioners' argument that CIETAC's initial mailing of notice to that address alone satisfies due

process is colorable." A-1456.  Such a finding improperly adopted wholesale an unsupported contention made by Petitioners for the first time in their reconsideration briefing, contradicting the court's initial decision, which had found that "[i]t is not clear from the record where CIETAC sent this initial mailing," (A-1046 at n.3), and is wrong as a matter of law.

Numerous cases have found that a mailing that is returned as undeliverable does not satisfy due process, regardless of whether notice was sent to an address that the recipient designated as a service address and whether the recipient had a duty to "update" that address. *See, e.g., Jones v. Flowers*, 547 U.S. 220, 221, 223-34 (2006) (mailed notice of a tax sale that was returned undelivered did not satisfy due process, notwithstanding that the intended recipient did not comply with a statutory obligation to keep his address updated; once the government knew that its attempt to provide notice by mail was "ineffective," it "triggered an obligation on the government's part to take additional steps to effect notice"); *CKR L. LLP v. Anderson Invs. Int'l, LLC*, 525 F. Supp. 3d 518, 524–25 (S.D.N.Y. 2021) (where "petitioner's first attempt to effectuate service at that address was unsuccessful" in that "the Papers were not delivered," service to that address "would not be reasonably calculated to provide notice to [respondent]").  The District Court's reliance on *Yukos Cap. S.A.R.L. v. OAO Samaraneftegaz*, 963 F. Supp. 2d 289, 293 (S.D.N.Y. 2013), *aff'd sub nom. Yukos Cap. S.A.R.L. v. Samaraneftegaz*, 592 F.

App'x 8 (2d Cir. 2014) for this point is puzzling, at best. A-1456-59.  There was no issue with returned mail in *Yukos*; the notice reached its recipient.  The court in that case further held that the intended recipient had previously held itself out as (and was contractually delegated as) the "management company" for Yukos, *id*. at *297-298, and had made arguments on its behalf.  Thus, because the mailing was not returned, and there was a reasonable basis to send it to the management company, the notice was held to be reasonable under the circumstances.

In *Flowers*, the Arkansas State Lands Commissioner (the "Commissioner") sent a notice of a tax sale by certified letter to Jones, the owner of the property; the notice was sent to the address of the property to be sold in the tax sale. 547 U.S. at 223.  Nobody was home to sign for it, nobody appeared at the post office to retrieve it within the maximum time, and the post office returned the unopened letter marked "unclaimed." *Id.* at 223-24.  Two years later, the Commissioner sent a second certified letter to Jones at the same address, and that letter also returned and marked "unclaimed."  The Commissioner then sold the property. *Id* at 224.  Jones later sued the Commissioner, claiming that the government violated his due process rights by selling the property without providing adequate notice. *Id*.

The Supreme Court, addressing for the first time the "new wrinkle" of when a party has actual notice of a failure of delivery of process, determined that not taking additional steps to provide notice would be unreasonable, determining that "[n]o one

'desirous of actually informing' [another party] would simply shrug his shoulders

… and say 'I tried,'" but instead "would ordinarily attempt to resend it, if it is

practicable to do so." *Id.* at 227, 229-30.  Stated differently, "the government's

knowledge that notice pursuant to the normal procedure was ineffective triggered an

obligation on the government's part to take additional steps to effect notice."  The

District Court cited *Flowers* in its reconsideration opinion, but proceeded to ignore

that the Supreme Court had *rejected* the Commissioner's argument that Jones had

been required by statute to update his address. *Id.* at 226.

The holding in *Flowers* is directly applicable here.  Regardless of any "duty"

Qin might have had to update his address, CIETAC and Petitioners had, as in

*Flowers*, actual knowledge that the first two mailings to Qin were not received, and

as a matter of law, such service does not satisfy due process requirements. *See also*

*CKR L. LLP*, 525 F. Supp. 3d at 524-25 (proposal to mail service to same address

where first attempt was unsuccessful deemed constitutionally insufficient).

Additionally, Qin stated in an unrebutted affidavit that Petitioners had *actual*

*notice* that he had moved out of China altogether and relocated to the United States

in 2019. A-910-11 ¶27.  Courts have similarly held that service to an address that is

*known* to be wrong does not satisfy due process standards, even where the address

used is still the address of record. *See CKR L. LLP*, 525 F. Supp. 3d at 525 (where

petitioner was aware that the business at issue had closed, "petitioner provides the

Court no reason to believe that service … to that address would be successful, [and] the Court finds that such service would not be reasonably calculated to provide notice"); *In re Jafroodi*, 651 B.R. 13, at *21-22 (Bankr. C.D. Cal. May 8, 2023) (even though notice was sent to debtor's address listed in the petition, satisfying statutory requirements, mailing failed to satisfy constitutional due process standard where Trustee was "well aware" that debtor no longer lived at the address because the Trustee had forced the debtor out of that house and taken the keys) (citing *In re Weems*, 921–22 (Bankr. N.D. Ind. 2007) (suggesting that due process is not satisfied and personal jurisdiction is not established when a party mails the debtor papers at the address specified in the petition, or otherwise filed in writing, but the party knows the mailing is "is no longer reasonably calculated to provide" notice because the debtor's address has changed)).

### B. The District Court Erred in Holding that Notice to the North Alley Address Was Reasonably Calculated to Apprise Qin of the Arbitration

The District Court erred (twice) in concluding that CIETAC's notice addressed to Peng Yun at the North Alley Address was reasonably calculated to apprise Qin of the arbitration.

In their moving papers on summary judgment, Petitioners failed to meet their burden of demonstrating that no material issues of fact existed as to whether notice at the North Alley Address was adequate. *See Guang Dong*, 2005 WL 1118130 at *12 (denying confirmation where it found a "genuine issue of material fact[] with

regard to … whether [respondent] was accorded proper notice"). Petitioners offered *no evidence* to support a finding that Qin could be contacted at the North Alley Address. Petitioners did not contend that Qin ever resided in or stayed at the North Alley Address. Petitioners did not explain how they identified North Alley Address, did not explain who "Peng Yun" was, and did not explain how notice addressed to "Peng Yun" at that address was reasonably calculated to apprise Qin (or any of the other respondents) of the arbitration. Petitioners never even submitted a copy of the correspondence through which they unilaterally provided this address to CIETAC. *See supra*, at 11.

In opposing summary judgment, Qin submitted overwhelming evidence that a notice addressed to "Peng Yun" at the North Alley Address was not reasonably calculated to apprise him of the arbitration.

Qin submitted a sworn affidavit from Peng, who denied ever being Qin's agent, explained that he lives over 1,000 miles from the North Alley Address and was not in Beijing during June 2020, and stated that he never received the documents that CIETAC supposedly sent to that address. A-1305-06 ¶¶4-6. Peng also attached a "proof of mailing" from the record of the CIETAC arbitration concerning the June 2020 delivery to the North Alley Address, and noted that it does not say that he signed or accepted delivery of the package. A-1305 ¶4.

40

Qin also submitted his own declaration, in which he denied receiving the mailing from CIETAC to the North Alley Address. A-906-19. Qin swore that he had been living in the United States since 2019, and that Petitioners had actual knowledge of that fact since Qin was in direct contact with executives of their parent company. A-910-11 ¶27. Qin denied that the North Alley Address was his address and that Peng was his agent. A-911 ¶28. Qin stated that he did not learn of the arbitration until late October 2020, from a former executive who worked at Petitioners' parent company. A-912 ¶35.

In its summary judgment opinion, the District Court held that mailing notice to Qin at the North Alley Address "was not unreasonable under the circumstances" because the Court *mistakenly* understood that this address was attributed to Qin in the Supplemental Agreement. A-1059. After Qin moved for relief from the District Court's judgment (and pointed out the Court's error), the District Court abandoned this rationale, which was based upon a material factual error. The North Alley Address was *not* the address attributed to Qin in the Supplemental Agreement.

However, upon reconsideration, the District Court adopted Petitioners' entirely new arguments concerning the adequacy of notice at the North Alley Address. *See* A-1457 ("Petitioners (and CIETAC) had good reason to believe that Respondent could be reached at the North Alley address; They understood it be the address attributed to him in a contemporaneous Chinese civil action, and two

41

companies that he controls — represented by his counsel — accepted service there without objection.").

Once again, the District Court erred. As explained below, its findings have no basis in the record.

### 1. The District Court Improperly Relied Upon an Untranslated Chinese Language Judgment, Whose Content Was Misrepresented by Petitioners and Disputed by Qin

In finding the third delivery to be constitutionally sufficient, the Court relied heavily on Petitioners own representations—made by their U.S. counsel (which did not participate in the CIETAC arbitration) in a brief and nowhere in any supporting affirmation—that the third address for Qin was contained in a Chinese civil-court default judgment against SMI International. A-1417. As Qin pointed out below (A-1440), the Petitioners never provided the District Court with a translated copy of that judgment, which says no such thing, and which the District Court nevertheless improperly relied upon. *See Zhong v. U.S. Dep't of Justice*, 461 F.3d 101, 126 (2d Cir. 2006), *op. amended and superseded on other grounds*, 480 F.3d 104 (2d Cir. 2007) ("It is patently improper to draw conclusions from a document written in a foreign language in the absence of a certified translation."); *see also Regeda v. City of New York*, 2015 WL 5751117, at n.2 (E.D.N.Y 2015) ("The court find's plaintiff's translation is inadmissible without a certification of translation [] and consequently not cognizable on summary judgment.") (citation omitted); *Herediav Americare,*

42

*Inc.*, 2020 WL 3961618 (S.D.N.Y. July 13, 2020), *reconsideration denied*, 2020 WL 4748295 (S.D.N.Y. Aug. 17, 2020) (it is a "well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation"). Indeed, the record demonstrates that this is both incorrect as a factual matter, and, more importantly, that there was no basis upon which Petitioners could have reasonably believed this to be the case. As Qin pointed out in his reply brief, Qin was not a party to that case and, contrary to Petitioners' representations, the untranslated Chinese judgment at issue nowhere mentioned Qin or stated that the address was in any way linked to him. A-1440. The judgment itself states that the address for SMI International that it does contain was provided by the plaintiff in that lawsuit, not by SMI International. *Id*. Moreover, as Qin told the arbitrators and the District Court, he *was* a party to other ongoing civil litigation in China for which his counsel *was* identified. A-949. Yet Petitioners made no attempt to effect service to his counsel at the address that actually was associated with him in a Chinese civil court case.

The District Court nevertheless declined to demand any translation and proceeded to improperly rely on these unsupported assertions by Petitioners' U.S. counsel, and also improperly resolved ambiguities in favor of the Petitioners, rather than in favor of Qin, as it was required to do. *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 127 (2d Cir. 2003)).

The District Court had no basis to take Petitioners at their word that it was reasonable to believe the North Alley address was associated with Qin. As an initial matter, Petitioners have failed to produce the "Letters of Confirmation" that they provided to CIETAC identifying the North Alley address as a potential address to serve Qin. More importantly, however, the notice was addressed to a specific recipient, Peng, who similarly was not a party to and nowhere mentioned in the Chinese court judgment on which Petitioners now rely. As Peng stated in his affirmation, he was formerly a legal representative for Run Yun, but was terminated in January 2018, long before the Chinese lawsuit was filed and long before the underlying arbitration in this case. A-1304 ¶1. Legal representatives in China are a matter of public record (similar to agents for service of process on file with secretaries of state in the United States) and Peng was publicly identified as no longer being affiliated with Run Yun as of January 2018. *See supra* at 20. There was thus no possible basis on which Petitioners could argue that (1) the actual source of the address (including Peng as the addressee) was the Chinese court judgment, or that (2) even if it were, that it would be reasonable to think Peng was a proper addressee for any respondent, let alone for Qin. *See CKR L. LLP*, 525 F. Supp. 3d at 525 (where "petitioner provides the Court no reason to believe that service … to that address would be successful, the Court finds that such service would not be reasonably calculated to provide notice").

Seeking to justify its holding that notice sent to the North Alley Address complied with due process, the District Court cited *Tianjin Port Free Trade Zone Int'l Trade Serv. Co., Ltd.* v. *Tiancheng Chempharm, Inc.*, 2018 WL 2436990, at \*4 (E.D.N.Y. May 30, 2018), *aff'd*, 771 F. App'x 36 (2d Cir. 2019) (summary order). A-1457. The District Court stated that "*Tianjin Port* is instructive because like the present case, it found CIETAC's verified mailing to alternate, known addresses of the respondent to be constitutionally sufficient." A-1458 at n.5. The District Court disregarded critical distinctions between the facts *Tianjin Port* and the facts here.

In *Tianjin Port*, CIETAC initially mailed three arbitration documents to the address for respondent provided in the parties' sales contract, and all three of those documents (the notice of arbitration, the arbitration rules, and a list of arbitrators) were successfully delivered. *See Tianjin Port,* 2018 WL 2436990, at \*2, \*3-4. CIETAC's second mailing to respondent was returned. *Id.* at \*2. As a result, the petitioner provided CIETAC with an alternative address for respondent, a New York corporation, which was "the address listed for [the respondent] with the New York Secretary of State." *Id.* at \*4, n. 2. CIETAC resent the papers to that address, and those documents were not returned. *Id.* at \*2. On these facts, the district court in *Tianjin Port* found that notice to respondent complied with due process; the district court found that far from receiving inadequate notice, respondent "simply chose not

to participate in the proceedings."[14]  The Second Circuit affirmed the district court's holding in a summary order, noting in relevant part that CIETAC sent the arbitration papers to an "address that [respondent] has on file with the New York Department of State" and that "notice mailed directly to an entity is sufficient to afford it due process." *Tianjin Port*, 771 F. App'x at 37.

Here, unlike *Tianjin Port*, CIETAC's mailing of the notice of arbitration to Qin at the address contained in the underlying agreement was returned undelivered. Further, unlike *Tianjin Port* (where notice was sent to an address that a N.Y. corporation provided to the New York Secretary of State), here there is no allegation that notice was sent to an address that Qin designated.  Ironically, it was sent to an addressee (Peng) that official Chinese government records stated *was not* affiliated with any respondent and to an address which *Petitioners* unilaterally identified that was not associated with that addressee nor with any respondent. A-1304 ¶¶1-2.  As such, contrary to the District Court's holding, this *was not* a "known" address.  And as discussed above, Petitioners' only after-the-fact "evidence" that Qin could be contacted at the North Alley Address — a default judgment against SMI International, in a case to which Qin was not a party — does not even mention Qin.

---

[14] This stands in stark contrast with Qin, who did appear challenged the deficient notice and his exclusion from the arbitrator selection process as soon as he actually learned of the proceedings from other sources. A-912 ¶¶37-38; A-922-23.

### 2. The District Court Incorrectly Found that Other Arbitral Respondents Accepted Service at the North Alley Address

The District Court also erred in finding that "Petitioners (and CIETAC) had good reason to believe that Respondent could be reached at the North Alley address" because "two companies that [Qin] controls — represented by [Qin's] counsel — accepted service [at the North Alley Address] without objection." Nothing in the record supports this finding.

The respondent entities purportedly served at the North Alley Address (SMI International and Run Yun) disputed the propriety of service at that address A-935-37; A-948-53. Not only did these respondents *not* "accept" service, but they repeatedly contended to CIETAC that service upon them was defective. *See supra*, at 10. The District Court's statement that they "accepted service without objection" is clear error.

Further, none of the respondents appeared in the Arbitration until November 2020, over four months after CIETAC purportedly sent notice to them at the North Alley Address in or about June 2020. Significantly, Petitioners *unilaterally* provided CIETAC with that address for three respondents (Qin, SMI International and Run Yun) after CIETAC's initial mailing to these respondents was returned (A-138; A-1191); there is no evidence in the record that any of these respondents consented to be served at that address, or that any of them maintained a presence there when CIETAC purported to deliver notice to them in June 2020.

Even if SMI International and Run Yun were properly served at the North Alley Address (which they were not), the District Court erred in concluding that it was reasonable for CIETAC and Petitioners to believe that notice to these other respondents would also be sufficient to apprise *Qin* of the arbitration. The District Court cited no authority for the proposition that service upon a corporate entity also constitutes notice upon its shareholders or officers. Indeed, this proposition has been repeatedly rejected. *See, e.g.*, *Despain v. Salt Lake Area Metro Gang Unit*, 13 F.3d 1436, 1438 (10th Cir. 1994) (holding that "[s]ervice on [a government agency] … did not constitute service on [the agency's] agents as individuals"); *Park v. Carson Min. Hot Springs LLC*, 2010 WL 11685124, at *3 (W.D. Wash. Aug. 26, 2010) ("Service on a corporation does not accomplish service on its owners or agents."); *Scofield v. Fishback Fin. Corp.*, 2010 WL 2464860, at *5 (D.S.D. June 14, 2010) ("Every corporation has the status of a separate legal person, and it is basic law that service upon person A does not constitute service upon person B unless A is agent for B or unless for reasons of fairness or for practical consideration […]") (citation omitted); *Minshall v. Johnston*, 417 P. 3d 957, 963 (Colo. App. Mar. 22, 2018) ("[Plaintiffs] do not cite, and we have not found, any legal authority supporting the proposition that service on the registered agent of a corporation is sufficient, by itself, to effectuate valid service on a 'co-owner' of a corporation."); *cf. Am. Lecithin Co. v. Rebmann*, 2017 WL 4402535, at *8-9 (S.D.N.Y. Sept. 30, 2017) (in the absence

48

of specific allegations of alter ego, service on large shareholder "did not constitute service on" corporations).

## II. THE JUDGMENT SHOULD BE VACATED BECAUSE QIN ESTABLISHED A DEFENSE TO ENFORCEMENT UNDER ARTICLE V(1)(b) OF THE CONVENTION

Article V(1)(b) of the Convention allows a court to refuse enforcement of an arbitral award if "[t]he party against whom the award was invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case." 21 U.S.T. 2517, 330 U.N.T.S. 38.

Here, Qin has established he was not afforded notice of the arbitration or the appointment of the arbitrator in a manner consistent with due process. The District Court erred in concluding that Qin was required to demonstrate prejudice from this due process violation. To the extent a showing of prejudice is required, the District Court further erred in holding that Qin was not prejudiced.

### A. The District Court Erred in Requiring Qin to Demonstrate That He was Prejudiced by the Deficient Notice

As discussed above, due to deficient notice, Qin did not receive Petitioners' notice of arbitration. Nor did he receive CIETAC's "Notice of Arbitration Panel Formation." A-139. These circumstances, standing alone, constitute a defense to enforcement of the Award under Article V(1)(b) of the Convention, because Qin "was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings []."

49

Indeed, the plain language of Article V(1)(b) allows a court to refuse enforcement of an arbitral award if "[t]he party against whom the award was invoked was not given proper notice of the appointment of the arbitrator *or* of the arbitration proceedings *or* was otherwise unable to present his case." (emphasis added). This language is drafted in the disjunctive, meaning that *either* "improper notice of the appointment of the arbitrator" or improper notice "of the arbitration proceedings," standing alone, is defense to enforcement of an award. *Cf. Spier v. Calzaturificio Tecnica S.p.A.*, 663 F. Supp. 871, 875 (S.D.N.Y. 1987) (stating that Article V(1)(e) of the Convention, which provides that a foreign arbitral award will not be enforced if it "has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made," is drafted with the "disjunctive 'or'" and should be read accordingly).[15]

Contrary to the plain language of Article V(1)(b), the District Court held that CIETAC's failure to provide Qin with notice of the appointment of the arbitrator and improper notice of the arbitration proceedings does not constitute a defense to

---

[15] *See also* UNCITRAL New York Convention Guide, Article V(1)(b) ("The drafters of the New York Convention retained the notice requirements of due process as they appeared in article 2(b) of the 1927 Geneva Convention. However, they wished to also cover other serious breaches of due process *and thus included the inability of a party to present its own case as a separate requirement*.") (citing *Travaux préparatoires*, Summary Records of the United Nations Conference on International Commercial Arbitration, Twenty-third Meeting, E/CONF.26/SR.23, p. 15) (emphasis added). In any event, the Second Circuit has not taken a definitive position on whether a showing of prejudice is required in the event of a procedural due process violation. *See, e.g.*, *In Matter of Motors Liquidation Co.*, 829 F.3d 135, 161-63 (2d Cir. 2016) (noting differing opinions and declining to take a position).

enforcement of the Award *unless* Qin was also "unable to present his case." Thus, as the District Court reasoned, while "a lack of actual notice could explain [Qin's] failure to nominate an arbitrator of his choosing within the time frame provided by CIETAC rules," Qin nevertheless "was afforded the opportunity to challenge the adequacy of service and the composition of the arbitral panel multiple times in the underlying arbitration." A-1459.

This was error. The District Court's reading eviscerates the protections of Article V(1)(b) by reading the words "*proper notice of the appointment of the arbitrator or of the arbitration proceedings*" out of the Convention.

Further, the District Court's holding that Qin "was afforded the opportunity to challenge the adequacy of service and the composition of the arbitral panel multiple times in the underlying arbitration" disregards the fact that CIETAC was not applying U.S. due process principles. Indeed, no decision by CIETAC or any foreign arbitral tribunal can *ever* foreclose independent review by United States courts of whether (for purposes of determining whether a defense under Article V(1)(b) of the Convention exists) a respondent received adequate notice of arbitration proceedings.

Significantly, in an enforcement proceeding, it is the "application of the *forum state's standards of due process*" that controls. *Iran Aircraft Indus.*, 980 F.2d at 145-46. Constitutional due process rights are "entitled to full force under the Convention

as defenses to enforcement." *Id.* (internal citation omitted); *see also Yukos Cap.
S.A.R.L.*, 963 F. Supp. 2d at 295-96 (finding collateral estoppel inapplicable because
a foreign court's "decision that [respondent] did not 'receive' notice … is based at
least to some extent on its application of Russian law. By contrast, this case is
governed by a different legal standard—the inquiry is whether the steps taken to
apprise [respondent] of the proceedings comport with domestic due process
standards.").

Thus, the District Court was required to conduct an independent review of
Qin's notice arguments, under U.S. law. It is of no moment that, as the District Court
held, Qin "was afforded the opportunity to challenge the adequacy of service and the
composition of the arbitral panel multiple times *in the underlying arbitration*." A-
1459 (emphasis added).[16] A U.S. court cannot defer to CIETAC on the issue of
whether notice complied with U.S. due process principles. *See CEEG*, 829 F.3d at
1207 (holding that notice of arbitration proceedings provided by CIETAC did not
comply with due process under United States law).

---

[16] Further, numerous courts have found an Article V(1)(b) challenge waived when it was not raised
before the arbitral panel. *See, e.g.*, *Standard Elec. Corp. v. Bridas Sociedad Anonima Petrolera
Indus. y Commercial*, 745 F. Supp. 172, 180 (S.D.N.Y. 1990) (citing *La Société Nationale pour
La Récherche, La Production, Le Transport, La Transformation et La Commercialisation des
Hydrocarbures v. Shaheen Natural Resources,* 585 F. Supp. 57, 62, 65 (S.D.N.Y.1983), *aff'd,* 733
F.2d 260 (2d Cir.), *cert. denied,* 469 U.S. 883 (1984).

**B. Qin's Loss of His Rights to Meaningfully Participate in the Arbitration, Including in Arbitrator Selection, Was Substantially Prejudicial**

In any event, to the extent a showing of prejudice is required, there is no question that Qin was prejudiced.

Preliminarily, as a result of the deficient notice, Qin was unable to participate in the arbitration "at a meaningful time and in a meaningful manner.'" *Iran Aircraft Indus*., 980 F.2d at 146 (quoting *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976)). Qin was never able to submit responsive pleadings or to assert counterclaims. He was also given mere weeks to prepare for a hearing in a complex financial case involving a nine-figure dispute. *See Shafii v. Brit. Airways*, 872 F. Supp. 1178, 1181 (E.D.N.Y.), *aff'd*, 71 F.3d 404 (2d Cir. 1995) ("The courts consider an arbitration proceeding fair if, [among other things], each party has had "sufficient opportunity to prepare its case …") (citation omitted).

Most significantly, Qin was denied his ability to exercise his right under CIETAC rules to nominate an arbitrator.[17] The deprivation of Qin's right to participate in arbitrator selection is a grave procedural defect that requires the District Court's judgment to be vacated.

---

[17] Further, as discussed above, Qin's co-respondents were signatories to the Capital Increase Agreement, which provides that "one arbitrator shall be appointed by either of the parties to the arbitration," with the third arbitrator appointed by CIETAC. As such, the composition of the arbitral panel violated the Capital Increase Agreement, which is an independent defense to enforcement of the Award under Article V(1)(d). Qin's co-respondents could have raised that defense if they were named in this enforcement proceeding.

Numerous federal courts have declined to enforce arbitral awards under the Convention where procedural defects compromised parties' right to nominate arbitrators or the process by which arbitrators are selected. *See, e.g.*, *CEEG*, 829 F. 3d at 1207-08 (CIETAC award unenforceable where defective notice caused respondent to miss deadline to appoint an arbitrator, stating that "depriving [respondent] of the right to participate in appointing the arbitral tribunal itself evidences substantial prejudice."); *Encyclopedia Universalis SA*, 403 F.3d at 91 (affirming denial of confirmation, stating that "the issue of how the third arbitrator was to be appointed is more than a trivial matter of form …as failure to comport with an agreement's requirements for how arbitrators are selected is one of only seven grounds for refusing to enforce an arbitral award"); *Millers Mut. Fire Ins. Co. v. Pinnacle Underwriters Mgmt. Assocs., Ltd.*, 2002 WL 424579, at *1 (N.D. Tex. Mar. 15, 2002) (staying arbitration where arbitrator selected by the parties could not travel for 4-6 weeks to oversee arbitration, stating that "[t]he situation here invokes the 'valuable' right to select an arbitrator"); *Stef Shipping Corp. v. Norris Grain Co.*, 209 F. Supp. 249, 253 (S.D.N.Y. 1962) ("The Right to appoint one's own arbitrator [] is of the essence of tripartite arbitration[.]").[18]

---

[18] Although Qin's arguments on this appeal are framed under Article V(1)(b) of the Convention (which concerns due process defects), Qin's due process invokes the same principles which underlie Article V(1)(d), which addresses defects in the process by which arbitrators were selected. Federal courts have repeatedly declined to enforce arbitration awards where there was a procedural defect that affected arbitrator selection. *See Serv. Emps. Int'l Union*, 2006 WL 692000, at *4-5 ("Case law in this Circuit supports vacating an arbitration award where the arbitrator acted without

The Tenth Circuit's decision in *CEEG* is directly on point. In that case, the respondent, an American company based in Colorado, received a Chinese-language document from CIETAC and missed the deadline to appoint an arbitrator because it did not understand that it was a notice of arbitration. The Tenth Circuit held the resulting award unenforceable under the Convention given that the Chinese language notice did not comply with due process under U.S. law, even though CIETAC's rules permitted the arbitration to proceed in Chinese. *See id.* at 1207 ("We conclude that the Chinese-language notice was not reasonably calculated to apprise [respondent] of the proceedings."); *id.* at n. 3 (petitioner "cannot avoid responsibility for insufficient notice by arguing that it assigned to [CIETAC] the duty to ensure that the notice was reasonably calculated to apprise [respondent] of the proceedings"). Here, as in *CEEG*, Petitioners cannot escape responsibility for CIETAC's defective notice, particularly given that they unilaterally provided the North Alley Address to CIETAC.

As the Tenth Circuit reasoned, where defective notice causes a respondent to miss a deadline to appoint an arbitrator, the ensuing arbitration is fatally tainted:

---

authority because he was not selected in accordance with the methods specified in the parties' agreement."); *PoolRe Ins. Corp. v. Org. Strategies, Inc.*, 783 F.3d 256, 264 (5th Cir. 2015) (affirming vacation of arbitral award where arbitrator was not "selected according to contract specified method"); *Hugs & Kisses, Inc. v. Aguirre*, 220 F.3d 890, 893–94 (8th Cir. 2000) (award could not be confirmed as "appellants did not agree on the arbitrator or give [claimant] the power to unilaterally choose one"). Both the *CEEG* and *Encyclopaedia Universalis* courts read the inclusion of this defense in the Convention as an indication that the drafters considered composition of the arbitral panel to be of utmost importance.

> Hindering the right to participate in the panel-selection process is not a minor procedural misstep. The arbitral tribunal determines the parties' rights with virtually no possibility of appeal or review … We agree with the district court that **depriving [respondent] of the right to participate in appointing the arbitral tribunal itself evidences substantial prejudice.**

*CEEG*, 829 F.3d at 1207-08 (emphasis added).

The Second Circuit's decision in *Encyclopedia Universalis* also strongly supports Qin's arguments. 403 F.3d 85. In *Encyclopedia Universalis*, the arbitration agreement required two party-appointed arbitrators to select a third; if they failed to agree, an arbitral institution would appoint one. The Second Circuit found that the arbitral institution appointed a third arbitrator even though there was "no evidence that the parties attempted to agree upon a third arbitrator []." *Id.* at 91. The Second Circuit affirmed the district court's refusal to confirm the arbitral award because the composition of the arbitral panel was not in accordance with the parties' agreement. As the Second Circuit stated:

> **[T]he issue of how the third arbitrator was to be appointed is more than a trivial matter of form**. Article V(1)(d) of the New York Convention itself suggests the importance of arbitral composition, **as failure to comport with an agreement's requirements for how arbitrators are selected is one of only seven grounds for refusing to enforce an arbitral award.** As to the complaint that this result exalts form over substance, at the end of the day, we are left with the fact that the parties explicitly settled on a form and the New York Convention requires that their commitment be respected.

*Encyclopedia Universalis SA*, 403 F.3d at 91 (emphasis added).

Here, as in *Encyclopedia Universalis S.A.*, the process by which Qin was notified of the arbitration (and hence, of his deadline to nominate an arbitrator and recommend candidates for the principal arbitrator) directly impacted arbitrator selection and is thus "more than a trivial matter of form." *Id*. CIETAC purported to serve Qin at an address not contained in the parties' agreement, in a manner that failed to comply with due process under U.S. law. CIETAC nevertheless started the clock on Qin's time to appoint an arbitrator, which ran out before Qin actually learned of the Arbitration. After he did, CIETAC refused Qin's repeated requests to reset arbitrator selection deadlines. Thus, due to defective notice, Qin's ability to participate in arbitrator selection was eviscerated. Accordingly, this Court should find that Qin has established a valid defense to enforcement of the Award under Article V(1)(b) of the Convention.[19]

---

[19] To the extent this Court determines that material issues of fact exist regarding whether Qin has established a defense to enforcement, this Court should vacate the District Court's judgment and remand the case with instructions that the District Court order an evidentiary hearing to resolve any such issues of fact, and if it cannot, confirmation should be denied. *Guang Dong*, 2005 WL 1118130 at *12 (denying confirmation where it found a "genuine issue of material fact[] with regard to … whether [respondent] was accorded proper notice").

## <u>CONCLUSION</u>

The judgment of the District Court should be vacated and the case should be remanded with instructions that the District Court vacate its summary judgment order and enter an order denying Petitioners' summary judgment motion.

Dated: July 21, 2023

       Respectfully submitted,

       /s/ Amiad M. Kushner
       AMIAD M. KUSHNER
       JENNIFER BLECHER
       XINTONG ZHANG
       SEIDEN LAW LLP
       322 Eighth Avenue, Suite 1200
       New York, New York 10001
       (646) 766-1914

       *Attorneys for Respondent-Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the limits of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts exempted by Fed. R. App. P. 32(f), this document contains 13,946 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally-spaced font using Microsoft Word 2010, namely, Times New Roman, font size 14.

Dated: New York, New York
      July 21, 2023

                            /s/Amiad Kushner
                             Amiad Kushner

# SPECIAL APPENDIX

# TABLE OF CONTENTS

PAGE

Opinion and Order (Denying Respondent's Rule 60(b) Motion),
dated March 31, 2023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SPA-1

Respondent Hui Qin's Notice of Appeal, dated April 28, 2023 . . . . . . . . SPA-16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HUZHOU CHUANGTAI RONGYUAN INVESTMENT
MANAGEMENT PARTNERSHIP; HUZHOU
HUIHENGYING EQUITY INVESTMENT
PARTNERSHIP; and HUZHOU HUIRONGSHENG
EQUITY INVESTMENT PARTNERSHIP,

                        Petitioners,

                -v.-

HUI QIN,

                        Respondent.

21 Civ. 9221 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Petitioners brought this action to enforce a multi-hundred-million-dollar judgment awarded to them in a Chinese arbitration. The Court previously confirmed the Chinese arbitral award and granted summary judgment to Petitioners by Opinion and Order dated September 26, 2022. Respondent now asks the Court to reconsider a portion of that decision and vacate its prior judgment. For the reasons that follow, the Court corrects a factual mistake in its original Opinion that was occasioned by an unfortunate redaction in the parties' summary judgment submissions, but declines to reconsider its original legal conclusion.

BACKGROUND[1]

A.    **Factual Background**

The Court assumes familiarity with the facts of this case, which facts are recounted at length in its summary judgment Opinion. *Huzhou Chuangtai Rongyuan Inv. Mgmt. P'ship* v. *Qin*, No. 21 Civ. 9221 (KPF), 2022 WL 4485277 (S.D.N.Y. Sept. 26, 2022). Only the facts relevant to Respondent's notice of the arbitration — the subject of the instant motion — are recounted here. The facts that follow supplement, and in one instance correct, the Court's initial telling of the facts.

CIETAC, the Chinese arbitral authority that issued the underlying award for Petitioners, thrice endeavored to notify Respondent of the arbitration by mail. On May 26, 2020, it mailed a notice of the arbitration to Respondent at 18B, 14F, Building 1, Beili, Yijingyuan, Chaoyang District, Beijing (the "Building Address"). (*See* Lee Decl., Ex. 1). The Supplemental Agreement

---

[1]    The Court adopts the naming and citation conventions defined in its September 26, 2022 Opinion and Order granting summary judgment to Petitioners. *Huzhou Chuangtai Rongyuan Inv. Mgmt. P'ship* v. *Qin*, No. 21 Civ. 9221 (KPF), 2022 WL 4485277, at *1 n.1 (S.D.N.Y. Sept. 26, 2022). The Court draws facts from the parties' submissions in connection with both the motion for summary judgment (Dkt. #15) and the instant motion, including the Declaration of Hui Qin and its exhibits (Dkt. #33 ("Qin Decl.")); the Declarations of Carol Lee and their exhibits (Dkt. #37 ("Lee Decl."); Dkt. #81 ("Lee Recon. Decl.")); the Declaration of Xingtong Zhang and its exhibits (Dkt. #68 ("Zhang Recon. Decl.")), including the unredacted English translation of the Supplemental Agreement (Dkt. #68-5 ("Supplemental Agreement")) and the unredacted English version of the underlying arbitral award (Dkt. #68-3 ("CIETAC Award")); and the Declaration of Yun Peng and its exhibits (Dkt. #69 ("Peng Recon. Decl.")). Any additional facts sourced from the declarations and their accompanying exhibits are cited using the convention "[Name] Decl., Ex. [ ]."

The Court refers to Respondent's brief in support of his motion to vacate the summary judgment Opinion and resulting judgment as "Resp. Recon. Br." (Dkt. #67); to Petitioners' brief in opposition as "Pet. Recon. Opp." (Dkt. #82); and to Respondent's reply as "Resp. Recon. Reply" (Dkt. #88).

attributes this address to Respondent and specifies that notices to that address
"shall be deemed as effectively served[.]"  (Supplemental Agreement 1; *see also
id.* § 12.2).  In addition to being listed on the Supplemental Agreement, the
Building Address is Respondent's "registered address" with the Chinese
government (*see* Pet. Recon. Opp. 6; Resp. Recon. Reply 8 & n.8), though
Respondent attests that "the property was sold" and he has not lived there
since 2003 (Qin Decl. ¶ 27).[2]  CIETAC's mailing to Respondent at the Building
Address was "returned by postal services."  (CIETAC Award 2).

CIETAC notified Petitioners that the mailing was unsuccessful and
prompted them "to reasonably inquire about the valid correspondence
addresses" of Respondent and two other arbitral respondents (SMI
International and Chengdu Run Yun), whose initial mailings were also
returned.  (CIETAC Award 2).[3]  Petitioners informed CIETAC that Respondent
could be served at "9 Xiangjun North Alley, Hujialou Street, Chaoyang District,
Beijing" (the "North Alley Address") in care of Yun Peng, or at "Qin Hui, …,
Rooms 2015/2016, Floors 18-19, Tower B, No. 2 Jiangtai Road, Chaoyang
District, Beijing" (the "Jiangtai Road Address").  (*Id.*).  Papers in a separate
2019 Chinese civil lawsuit involving SMI International describe the North Alley

---

[2]     Petitioners give the Court good reason to question the veracity of Respondent's
assertions in connection with this motion, including the fact that numerous
contemporaneous court documents in other actions attribute the Building Address to
Respondent.  (*See* Pet. Recon. Opp. 6).  Respondent does not contest that the Building
Address remains his "registered address" to this day, nor does he specify to whom he
sold it or whether he controls that entity.  (*See* Resp. Recon. Reply 8-9; Qin Decl. ¶ 27).

[3]     CIETAC's first attempt to serve the remaining arbitral respondent, SMI Shengdian, was
successful.  (CIETAC Award 2).

Address as SMI International's office address as well as Respondent's residential and mailing address.  (*See* Qin Decl., Ex. 8).[4]

In or about June or July 2020, CIETAC re-mailed the arbitration notices to the new addresses provided by Petitioners.  (CIETAC Award 2).  The documents sent to Respondent at the Jiangtai Road Address were returned by the postal service, but CIETAC's mailing to Respondent at the North Alley Address was delivered successfully.  (*Id.*; *see also* Peng Decl., Ex. C (delivery receipt for service at the North Alley Address)).  The arbitral papers were also delivered successfully to SMI International and Chengdu Run Yun at the North Alley Address.  (CIETAC Award 2).  In July 2020, CIETAC gave all parties an opportunity to confirm their addresses and to object to service.  (*Id.*; *see also* Lee Decl., Ex. 1).  CIETAC ultimately determined that "all documents and written notices pertaining to this case have been effectively served by the Arbitration Court on all parties according to provisions of Article 8 of the Arbitration Rules."  (CIETAC Award 5).

CIETAC constituted a panel of three arbitrators in August 2020 and the arbitration proceedings commenced.  (CIETAC Award 2-3).  On November 11, 2020, the day before the case was set to be heard, CIETAC received from

---

[4]    Respondent objects to the Court's consideration of the 2019 suit because Petitioners did not provide an English translation of the judgment in that action.  (Resp. Recon. Reply 5).  But Respondent's own submissions to this Court provide the same information.  Respondent attached to his declaration a copy of objections he raised to the arbitral panel, in which he acknowledges that the 2019 case attributes the North Alley Address to SMI International (but contests the accuracy of those papers).  (Qin Decl., Ex. H).  Even disregarding the Chinese judgment itself, Petitioners' contention is supported by the record.

4

Respondent and SMI Shengdian a request to re-send them the arbitration
documents, which CIETAC promptly did as a courtesy (and not as a renewed
attempt at service). (*Id.*). CIETAC also adjourned the hearing to December 22,
2020. (*Id.*). With the assistance of counsel, Respondent participated in the
arbitration. *Qin*, 2022 WL 4485277, at *3. Respondent's counsel in the
arbitration also represented the other Arbitral Respondents. (Pet. Recon.
Opp. 7). In April 2021, CIETAC issued a written decision largely in favor of
Petitioners. *See Qin*, 2022 WL 4485277, at *3 (summarizing the arbitral
decision).

**B.    Procedural Background**

The Court granted summary judgment for Petitioners on September 26,
2022. *See generally Qin*, 2022 WL 4485277. On October 11, 2022, the Court
entered final judgment in favor of Petitioners. (Dkt. #46). Contentious post-
judgment discovery followed. The Court does not exhaustively recount
Petitioners' collection efforts here, but notes that in the months following the
Court's summary judgment decision, Respondent has repeatedly resisted
Petitioners' discovery requests and has produced little responsive information.
Respondent's post-judgment conduct is the subject of a separate motion for
sanctions. (*See* Dkt. #104).

The instant motion was briefed simultaneously with Petitioners' post-
judgment discovery efforts. Respondent filed his motion to vacate the
judgment and accompanying papers on November 8, 2022. (Dkt. #66-69).
Petitioners filed their opposition and accompanying papers on November 28,

2022.  (Dkt. #81-82).  Respondent filed his reply on December 7, 2022.  (Dkt. #88).  The Court now resolves that fully briefed motion.

## DISCUSSION

### Respondent Is Not Entitled to Relief Under Rule 60(b)(1)

**A.     Applicable Law**

Federal Rule of Civil Procedure 60(b) permits "a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances[.]"  *Gonzalez* v. *Crosby*, 545 U.S. 524, 528 (2005).  "Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments."  *Tapper* v. *Hearn*, 833 F.3d 166, 170 (2d Cir. 2016) (quoting *Nemaizer* v. *Baker,* 793 F.2d 58, 61 (2d Cir. 1986)).  Motions for relief from a judgment under Rule 60 are "committed to the sound discretion of the district court," *Stevens* v. *Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (internal citation and quotation marks omitted), and are generally granted only upon a showing of "exceptional circumstances," *Ruotolo* v. *City of New York*, 518 F.3d 184, 191 (2d Cir. 2008); *see also Nemaizer,* 793 F.2d at 61 (explaining that although Rule 60(b) "should be broadly construed to do substantial justice, ... final judgments should not be lightly reopened" (citations omitted)).

Under Rule 60(b)(1), a party may seek relief from a judgment based on "mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).  The mistake provision "affords a party relief from a material mistake that changed the outcome of the court's judgment."  *In re Bulk Oil (USA), Inc.,* No. 93 Civ. 4492 (PKL), 2007 WL 1121739, at *10 (S.D.N.Y. Apr. 11, 2007) (quoting

**SPA-7**

*Matura* v. *United States,* 189 F.R.D. 86, 89 (S.D.N.Y. 1999))).  It permits the Court to correct its own errors of both fact and law.  *Kemp* v. *United States*, 142 S. Ct. 1856, 1862 (2022); *see also In re 310 Assocs.*, 346 F.3d 31, 34-35 (2d Cir. 2003).  It is not, however, "an additional opportunity to make arguments or attempt to win a point already 'carefully analyzed and justifiably disposed.'"  *In re Bulk Oil*, 2007 WL 1121739, at *10 (quoting *Matura,* 189 F.R.D. at 90).  A Rule 60(b)(1) motion must be filed within a year after entry of the challenged judgment.  Fed. R. Civ. P. 60(c)(1).

**B.     Respondent Was Afforded Proper Notice of the Arbitration**

Although Respondent originally opposed confirmation of the CIETAC Award on several grounds, he seeks reconsideration of only one: whether he received proper notice of the arbitration.  (Resp. Recon. Br. 13-20).  But, as discussed in the remainder of this section, in fixating on a minor, non-dispositive factual error in the Court's prior Opinion, Respondent misses the forest for the trees.

The New York Convention provides for nonenforcement of a foreign arbitral award where "[t]he party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case."  New York Convention, Art. V(1)(b).  This defense "essentially sanctions the application of the forum state's standards of due process."  *Iran Aircraft Indus.* v. *Avco Corp.*, 980 F.2d 141, 145 (2d Cir. 1992) (quoting *Parsons & Whittemore Overseas Co., Inc.* v. *Societe Generale de L'Industrie du Papier (RAKTA),* 508 F.2d 969, 975-76

(2d Cir. 1974)).  "Under American standards of due process, a party is entitled
to 'notice reasonably calculated, under all the circumstances, to apprise
interested parties of the pendency of the action and afford them an opportunity
to present their objections.'"  *Pagaduan* v. *Carnival Corp.*, 830 F. App'x 61, 62
(2d Cir. 2020) (summary order) (quoting *Jones* v. *Flowers*, 547 U.S. 220, 226
(2006)); *see also Iran Aircraft Indus.*, 980 F.2d at 146 ("[T]he fundamental
requirement of due process is the opportunity to be heard at a meaningful time
and in a meaningful manner." (quoting *Mathews* v. *Eldridge*, 424 U.S. 319, 333
(1976)).  In evaluating whether notice is reasonably given, the proper inquiry is
whether the party giving notice "acted reasonably in selecting means likely to
inform … not whether [the subject] actually received notice."  *Weigner* v. *City of
New York*, 852 F.2d 646, 649 (2d Cir. 1988).  Because the due process inquiry
requires consideration of the totality of the circumstances, it is necessarily a
fact-specific determination.  *Clermont* v. *Intra-Op Monitoring Servs., LLC*, No. 16
Civ. 6037 (DAB), 2017 WL 2239564, at *6 (S.D.N.Y. Mar. 29, 2017) (citing
*Flowers*, 547 U.S. at 234).

The Article V(1)(b) inquiry is not to be confused with other notice and
service standards.  A party may have sufficient notice to satisfy due process —
and by extension, Article V(1)(b) — even if it was not served with process to the
satisfaction of the Federal Rules of Civil Procedure.  *See Karaha Bodas Co.,
L.L.C.* v. *Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d
274, 299 (5th Cir. 2004) ("The right to due process does not include the
complete set of procedural rights guaranteed by the Federal Rules of Civil

Procedure." (internal quotation omitted)).  Similarly, a party may have sufficient notice to satisfy Article V(1)(b) even if that notice is not sufficient under the rules governing the arbitration itself.  *P.T. Reasuransi Umum Indonesia* v. *Evanston Ins. Co.*, No. 92 Civ. 4263 (MGC), 1992 WL 400733, at *3 (S.D.N.Y. Dec. 23, 1992) (concluding that notice comported with due process even though respondent "was not given proper notice of the commencement of the arbitration proceeding or the appointment of the arbitrators as is required by [the arbitration association's] rules").  Because the due process inquiry is "limited to determining whether the procedure used was fundamentally unfair," *BSH Hausgeräte, GMBH* v. *Kamhi*, 282 F. Supp. 3d 668, 673 (S.D.N.Y. 2017) (quoting *Abu Dhabi Inv. Auth.* v. *Citigroup, Inc.*, No. 12 Civ. 283 (GBD), 2013 WL 789642, at *7 (S.D.N.Y. Mar. 4, 2013), *aff'd*, 557 F. App'x 66 (2d Cir. 2014) (summary order)), it often demands less than either of those two alternative measures of notice.

The Court previously determined that "[t]he procedures CIETAC used to serve [Respondent] were not fundamentally unfair such that they violated due process." *Qin*, 2022 WL 4485277, at *8 (internal quotation marks omitted).  In so holding, it found CIETAC's three attempts to mail service to Respondent to be constitutionally adequate, particularly because the third mailing was sent "to the North Alley Address, which is the address attributed to [Respondent] on the Supplemental Agreement." *Id.*  The Court explained that "mailing arbitration documents to an address listed in the underlying agreement is sufficient notice under the New York Convention." *Id.*  The Court found

9

additional support for Respondent's awareness of the arbitration in "the fact
that [Respondent] contacted CIETAC to request additional copies of the
arbitration documents[.]"  *Id.*

Respondent believes the Court's initial determination to be in error
because, he believes, it was premised on the Court's mistaken understanding
that the Supplemental Agreement attributed the North Alley Address to
Respondent, when in fact it lists the Building Address.  (Resp. Recon. Br. 3-4,
11-12).  He further argues that whether service to the Building Address is
constitutionally sufficient is a materially disputed fact that defeats summary
judgment because both Respondent and Mr. Yun Peng, a Chengdu Run Yun
employee to whom the mailing to the North Alley Address was addressed, both
attest that they did not actually receive the mailing.  (*Id.* at 14-17 (citing Peng
Recon. Decl., Ex. A ¶ 5; Qin Decl. ¶ 29)).  In response, Petitioners argue that
CIETAC's initial mailing to the Building Address alone is constitutionally
sufficient notice (Pet. Recon. Opp. 17-22), and that in any event, Respondent
had actual notice of the arbitration because he appeared and participated in
the proceeding and because he shared counsel with the other Arbitral
Respondents (including his wholly-owned company SMI Shengdian), which
were served successfully (*id.* at 22-25).  Ultimately, Petitioners' legal analysis is
the correct one.

The Court takes this opportunity to clarify and correct a factual error in
its original Opinion.  The Supplemental Agreement attributes to Respondent
the Building Address, not the North Alley Address.  (*See* Supplemental

10

**SPA-11**

Agreement 1).  The Court does not appreciate that this critical fact was redacted in Petitioners' original submissions.

That mislabeling, however, does not change the Court's conclusion that Respondent was afforded proper notice of the arbitration.  Because the Supplemental Agreement states that service on Respondent at the Building Address is adequate (Supplemental Agreement § 12.2), and because Respondent never changed or updated his service address for purposes of that agreement, Petitioners' argument that CIETAC's initial mailing of notice to that address alone satisfies due process is colorable.  *See Yukos Cap. S.A.R.L.* v. *OAO Samaraneftegaz*, 963 F. Supp. 2d 289, 297-98 (S.D.N.Y. 2013), *aff'd*, 592 F. App'x 8 (2d Cir. 2014) (summary order) (noting that it was arbitral respondent's responsibility to inform the arbitral body of any changes to its preferred method of service).  But while mailing notice to an address listed in the parties' underlying agreement typically satisfies due process, once it became clear that the mailing was not delivered, CIETAC had an obligation to "tak[e] additional reasonable steps to notify [Respondent] … if practicable to do so," such as sending the mailing again by a different delivery method.  *Flowers*, 547 U.S. at 234-35; *see also CKR Law LLP* v. *Anderson Invs. Int'l, LLC*, 525 F. Supp. 3d 518, 524-25 (S.D.N.Y. 2021) (deeming proposal to mail service constitutionally insufficient because first attempt to serve documents at same address was unsuccessful).

In line with this obligation, CIETAC took additional, reasonable steps "with due regard for the practicalities and peculiarities of the case[.]"  *Mullane*

**SPA-12**

v. *Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314-15 (1950).  After its first

mailing to Respondent was returned, it sent the arbitration notices to

Respondent at two alternative addresses (the Jiangtai Road Address and the

North Alley Address).  (CIETAC Award 2).  Although its mailing to the Jiangtai

Road Address was returned as undeliverable, CIETAC verified that the mailing

to the North Alley Address was successful (*id.*), and a delivery receipt for that

successful mailing appears in the record (Peng Decl., Ex. C).

Under the circumstances, mailing the notice papers to the Building

Address, the Jiangtai Road Address, and the North Alley Address was

"reasonably calculated" to apprise Respondent of the proceedings.  *See*

*Pagaduan*, 830 F. App'x at 62.  Petitioners (and CIETAC) had good reason to

believe that Respondent could be reached at the North Alley address; They

understood it be the address attributed to him in a contemporaneous Chinese

civil action, and two companies that he controls — represented by his

counsel — accepted service there without objection.  *See Tianjin Port Free Trade*

*Zone Int'l Trade Serv. Co., Ltd.* v. *Tiancheng Chempharm, Inc.*, No. 17 Civ. 4130

(JS) (AYS), 2018 WL 2436990, at *4 (E.D.N.Y. May 30, 2018), *aff'd*, 771 F.

App'x 36 (2d Cir. 2019) (summary order) (finding notice proper under the New

York Convention where a portion of CIETAC's first mailing to an address listed

in the parties' underlying agreement was returned but CIETAC verified delivery

of additional mailings to two alternative addresses);[5] *Yukos Cap. S.A.R.L.*, 963

---

[5]     Respondent distinguishes *Tianjin Port* on the grounds that CIETAC's successful
        alternative mailing in that case was to an address registered to the respondent with the
        New York Secretary of State.  (Resp. Recon. Br. 16 n.13).  The Court does not deny this

F. Supp. 2d at 297 (finding, based on respondent's unresponsiveness, that it was reasonable for arbitrator to address subsequent notices to respondent's affiliate).  Respondent's Article V(1)(b) challenge fails not because any one attempted mailing is constitutionally sufficient, but because CIETAC's mailing to the address listed in the parties' contract, followed by its mailings to two additional, known addresses meets the relatively low burden imposed by due process.

Adding further support to the Court's conclusion, these notice efforts undeniably resulted in Respondent having an opportunity to appear and present his objections both to service and to the merits of the arbitration. Respondent contacted CIETAC the night before the arbitration was scheduled to occur to request re-mailing of the arbitration documents and an adjournment of the hearing (CIETAC Award 3), evincing that he was actually

---

factual difference.  But while court or arbitral rules may require service to such a registered address, the Constitution is not so exacting.  *Tianjin Port* is instructive because like the present case, it found CIETAC's verified mailing to alternate, known addresses of the respondent to be constitutionally sufficient:

> When some of the materials were returned, CIETAC sent the materials to two other addresses — a Great Neck, New York, address that [respondent] has on file with the New York Department of State as the address to which New York will mail process, and a Bayside, New York, address.  The documents sent to the latter two addresses were not returned, and CIETAC determined that the documents were duly served on [respondent]. [The respondent] nevertheless contends that it never received notice of the arbitration and submits a declaration to that effect. But notice mailed directly to an entity is sufficient to afford it due process, and we agree with the District Court that [respondent]'s declaration does not satisfy the "heavy" burden imposed on a party asserting a defense under the New York Convention.

*Tianjin Port*, 771 F. App'x at 37 (quoting *Encyclopaedia Universalis S.A.* v. *Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005)).  *Tianjin Port* thus turned on the fact that service to the alternative addresses was calculated to provide notice — not the fact that one of the alternative addresses was registered with the government.

aware of the arbitration, *see CBF Industria de Gusa S/A* v. *Amci Holdings, Inc.*,
316 F. Supp. 3d 635, 653 (S.D.N.Y. 2018) (considering an arbitral respondent's
request for additional time to answer an initial pleading "evidence that [the
respondent] was provided proper notice of the [a]rbitration"); *accord Anhui
Provincial Imp. & Exp. Corp.* v. *Hart Enters. Int'l, Inc.*, No. 96 Civ. 128 (LAK),
1996 WL 229872, at *3 (S.D.N.Y. May 7, 1996). The arbitral body assented
and adjourned the hearing for more than a month. (CIETAC Award 3). At the
rescheduled hearing, Respondent had an ample opportunity to participate and
present arguments with the assistance of counsel. *See Qin*, 2022 WL 4485277,
at *8-9.

Respondent's remaining counterarguments are unavailing. Even
accepting Respondent's assertion that his receipt of the mailing at the North
Alley Address is a contested fact (Resp. Recon. Br. 14-17), that contest is not
material to the due process inquiry. "Due process does not require perfect or
actual notice." *Yukos Cap. S.A.R.L.*, 963 F. Supp. 2d at 297; *see also Mullane*,
339 U.S. at 314-15. Respondent has also not shown that he was prejudiced.
While a lack of actual notice could explain his failure to nominate an arbitrator
of his choosing within the timeframe provided by CIETAC rules, Respondent
was afforded the opportunity to challenge the adequacy of service and the
composition of the arbitral panel multiple times in the underlying arbitration.
(*See, e.g.*, Qin Decl., Ex. 8 (filing raising service objections to CIETAC)). That
the arbitral panel ultimately disagreed with Respondent's positions is of no
moment. Due process is concerned only with whether there was notice

14

**SPA-15**

reasonably calculated to permit Respondent to present his objections, not

whether those objections ultimately persuaded the arbitral panel.

Because Respondent has still not carried the very heavy burden of proof

required to avoid confirmation of a foreign arbitral award, *see D.H. Blair & Co.,*

*Inc.* v. *Gottdiener,* 462 F.3d 95, 110 (2d Cir. 2006), the Court will not vacate its

original judgment.

**CONCLUSION**

For the foregoing reasons, Respondent's motion for relief from the

judgment is DENIED.  The Clerk of Court is directed to terminate the motion at

docket entry 66.

SO ORDERED.

Dated:      March 31, 2023
           New York, New York

                                        KATHERINE POLK FAILLA
                                 United States District Judge

**SPA-16**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
Huzhou Chuangtai Rongyuan Investment          :
Management Partnership, Huzhou Huihengying     :
Equity Investment Partnership, and Huzhou      :          1:21:cv-09221-KPF
Huirongsheng Equity Investment Partnership,    :
                                               :
                            Petitioners,       :
                                               :
            -v.-                                :
                                               :
Hui Qin,                                        :
                                               :
                            Respondent.         :
                                               :
-----------------------------------------------------------------x

<u>**NOTICE OF APPEAL**</u>

        Notice is hereby given that Respondent Hui Qin ("Respondent") appeals to the United

States Court of Appeals for the Second Circuit from the judgment entered by the Clerk of this

Court on October 11, 2022 (ECF 46) (the "Judgment"), including this Court's decision and order

entered on September 26, 2022 (ECF 44) that is referenced in the Judgment, and this Court's order

entered on March 31, 2023 (ECF 134) denying Respondent's motion for relief from the Judgment

pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.

Dated: April 28, 2023

                            SEIDEN LAW LLP


                            By:  ___/s/ Amiad Kushner_____
                                 Amiad Kushner
                                 Xintong Zhang
                                 322 Eighth Ave, Suite 1704
                                 New York, NY 10001
                                 646-766-1914
                                 akushner@seidenlaw.com
                                 xzhang@seidenlaw.com

                                 *Counsel for Respondent Hui Qin*

**SPA-17**

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 28th day of April, 2023, copies of the foregoing

Notice of Appeal were served via the Court's CM/ECF system to all counsel and parties

receiving electronic notice of pleadings filed in this case.


By:   ___/s/ Xintong Zhang_____
      Xintong Zhang
      SEIDEN LAW LLP
      322 Eighth Ave, Suite 1704
      New York, NY 10001
      646-766-1914
      xzhang@seidenlaw.com

      *Counsel for Respondent Hui Qin*