# 23-747

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆◆

HUZHOU CHUANGTAI RONGYUAN INVESTMENT MANAGEMENT PARTNERSHIP,
HUZHOU HUIHENGYING EQUITY INVESTMENT PARTNERSHIP, HUZHOU
HUIRONGSHENG EQUITY INVESTMENT PARTNERSHIP,

*Petitioners-Appellees,*

—against—

HUI QIN,

*Respondent-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR RESPONDENT-APPELLANT

AMIAD M. KUSHNER
XINTONG ZHANG
SEIDEN LAW LLP
322 Eighth Avenue, Suite 1200
New York, New York 10001
(646) 766-1914

*Attorneys for Respondent-Appellant*

# **TABLE OF CONTENTS**

PAGE

INTRODUCTION ...................................................................................1

ARGUMENT ........................................................................................5

I.    PETITIONERS FAIL TO REBUT QIN'S SHOWING THAT HE WAS NOT PROVIDED WITH NOTICE CONSISTENT WITH DUE PROCESS.........................................................................5

A. Whether Due Process Was Adequate is for United States Courts to Decide, Not CIETAC .......................................................5

B. Petitioners Cannot Dispute that Returned Mail Was Not "Reasonably Calculated" to Reach Qin ..........................................9

C. There is No Evidence Supporting Petitioners' Contention that the Third Mailing Was Reasonably Calculated to Reach Qin.............12

D. The Court Should Disregard Petitioners' Inflammatory and Irrelevant Arguments Concerning Actual Notice .........................19

II.    THE JUDGMENT SHOULD BE VACATED BECAUSE QIN WAS PREJUDICED BY DEFICIENT NOTICE; PETITIONERS' ARGUMENTS TO THE CONTRARY FAIL...................................20

CONCLUSION ....................................................................................24

# TABLE OF AUTHORITIES

PAGE(S)

## Cases

*Absolute Nevada, LLC v. Grand Majestic Riverboat Co., LLC*,
646 F. Supp. 3d 426 (S.D.N.Y. 2022) ....................................................11

*Albtelecom SH.A v. UNIFI Commc'ns, Inc.*,
2021 WL 1089982 (S.D.N.Y. Mar. 22, 2021) .........................................18

*BG Grp., PLC v. Republic of Argentina*,
572 U.S. 25 (2014) ....................................................................................7

*Botany Industries, Inc. v. New York Joint Board*,
375 F. Supp. 485 (S.D.N.Y.1974), vacated as moot,
506 F.2d 1246 (2d Cir. 1974)......................................................................8

*CEEG (Shanghai) Solar Science & Tech. Co., Ltd. v. Lumos LLC*,
829 F.3d 1201 (10th Cir. 2016) ................................................. 3, 8, 20, 22

*Clermont v. Intra-Op Monitoring Servs., LLC*,
2017 WL 2239564 (S.D.N.Y. Mar. 29, 2017)................................. 10, 11

*Cornfield v. Cornfield*,
156 F. App'x 343 (2d Cir. 2005) ...............................................................18

*Encyclopedia Universalis SA v. Encyclopaedia Britannica, Inc.*,
403 F.3d 85 (2d Cir. 2005)........................................................................21

*Guang Dong Light Headgear Factory Co., Ltd. v. ACI Int'l, Inc.*,
2005 WL 1118130 (D. Kan. May 10, 2005)..............................................18

*Harrison v. Republic of Sudan*,
838 F.3d 86 (2d Cir. 2016).........................................................................4

*Int'l Bus. Machs. Corp. v. Edelstein*,
526 F.2d 37 (2d Cir. 1975).........................................................................19

*Iran Aircraft Indus. v. Avco Corp., Inc.*,
 980 F.2d 141 (2d Cir. 1992).....................................................................6, 7

ii

PAGE(S)

*J & J Sports Prods., Inc. v. Potions Bar & Lounge, Inc.*,
2009 WL 763624 (E.D.N.Y. Mar. 23, 2009).............................................10

*Jones v. Flowers*,
547 U.S. 220 (2006)......................................................................1, 9

*Krizek v. Cigna Grp. Ins.*,
345 F.3d 91 (2d Cir. 2003)...............................................................18

*Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union*,
954 F.2d 794 (2d Cir. 1992)................................................................7

*Matter of Arb. between InterCarbon Bermuda, Ltd. &*
 *Caltex Trading & Transp. Corp.*,
146 F.R.D. 64 (S.D.N.Y. 1993) ..........................................................11

*Matter of Lauritzen Kosan Tankers (Chem. Trading, Inc.)*,
903 F. Supp. 635 (S.D.N.Y. 1995)......................................................11

*Millers Mut. Fire Ins. Co. v. Pinnacle Underwriters Mgmt. Assocs., Ltd.*,
2002 WL 424579 (N.D. Tex. Mar. 15, 2002)..........................................21

*Move, Inc. v. Citigroup Markets, Inc.*,
840 F.3d 1152 (9th Cir. 2016) ........................................................ 4, 23

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950).......................................................................11

*New England Health Care Emps. Union, Dist. 1199 v.*
*Serv. Emps. Int'l Union, AFL-CIO, CLC*,
942 F. Supp. 96 (D. Conn. 1996)..........................................................8

*NYKCool A.B. v. Pac. Int'l Servs., Inc.*,
66 F. Supp. 3d 385 (S.D.N.Y. 2014), *adhered to on reconsideration*,
2015 WL 998455 (S.D.N.Y. Mar. 5, 2015)............................................17

*Olin Holdings Ltd. v. State of Libya*,
2022 WL 864507 (S.D.N.Y. Mar. 23, 2022), *aff'd*
73 F.4th 92 (2d Cir. 2023) ................................................................8

iii

PAGE(S)

*Orix Fin. Servs. v. Phipps*,
2009 WL 30263 (S.D.N.Y. Jan. 6, 2009) ..................................................10

*Payne v. United States*,
359 F.3d 132 (2d Cir. 2004)........................................................................18

*Regeda v. City of New York*,
2015 WL 5751117 (E.D.N.Y. 2015) .........................................................17

*Reliastar Life Ins. Co. v. EMC Nat'l Life Co.*,
564 F.3d 81 (2d Cir. 2009)............................................................................7

*Shafii v. Brit. Airways*,
872 F. Supp. 1178 (E.D.N.Y.), *aff'd*,
71 F.3d 404 (2d Cir. 1995).........................................................................22

*Stef Shipping Corp. v. Norris Grain Co.*,
209 F. Supp. 249 (S.D.N.Y. 1962).............................................................21

*Tianjin Port Free Trade Zone International Trade Service Co. v.
Tiancheng Chempharm, Inc. USA*,
771 F. App'x 36 (2d Cir. 2019) ......................................................... 16, 17

*United States v. Hill*,
658 F. App'x 600 (2d Cir. 2016) ...............................................................19

*Vidaplan, S.A., Inc. v. Cipriani Int'l, S.A.*,
2006 WL 8461283 (S.D.N.Y. Aug. 7, 2006)..............................................11

**Rules**

Fed. R. Evid. 404(a) ...................................................................................22

iv

## **INTRODUCTION**

Petitioners fail to rebut Qin's arguments that notice of the underlying arbitration failed to comply with due process.[1]  Petitioners devote most of their Opposition Brief ("Opposition" or "Opp.") to irrelevant arguments regarding Qin's character and speculation that he may have had actual notice of the arbitration, which have no bearing on the due process violation that is at issue on this appeal.  As Petitioners ultimately concede, the issue before this Court is whether due process was satisfied, *i.e.*, "whether Petitioners acted reasonably in selecting means likely to inform [Qin of the arbitration], *not whether [Qin] actually received notice*." Opp. at 49 (emphasis added and citation omitted).  The record is clear that they did not.

As a matter of law, mailed service that is returned to the sender as undeliverable is not "reasonably calculated" to provide notice because in that circumstance, the sender is aware that the other party did not receive it. *Jones v. Flowers*, 547 U.S. 220, 226 (2006).  It is undisputed that CIETAC's first two mailings were returned undelivered.  Therefore, as a matter of law, these two mailings did not provide notice that complies with due process.

As the *Jones* court made clear, where notice is returned undelivered, due process can only be satisfied through another notice that is "reasonably calculated"

---

[1] Undefined capitalized terms have the meaning set forth in Respondent-Appellant's opening brief (ECF 29) and in Petitioners-Appellees' Opposition Brief ("Br."; ECF 47).

to reach the intended recipient. *Id.* That did not happen here. The third mailing was addressed to "Peng Yun" at an address (the "North Alley Address") that had no association with Qin. Even though it was Petitioners' burden to establish the absence of any issue of material fact that notice in the arbitration satisfied due process, there is *nothing* in the record supporting Petitioners' claim that a notice addressed to "Peng Yun" at the North Alley Address was reasonably calculated to apprise Qin of the arbitration. As detailed further below, Petitioners' claims to the contrary are predicated on misrepresentations of the record or attempts to mischaracterize Petitioners' self-serving allegations as purported "findings" of the CIETAC panel or the District Court.

Petitioners also fail to rebut Qin's showing that, due to the deficient notice, he was prejudiced because he missed the deadline to appoint an arbitrator and thereby participate in arbitrator selection.

Preliminarily, Petitioners cite no authority disputing that the plain text of the Convention does not even require a showing of prejudice. Even if a showing of prejudice is required, Qin was prejudiced as a matter of law because the defective notice caused Qin to miss CIETAC's deadline to appoint an arbitrator. As the Tenth Circuit stated in a case directly on point that was extensively discussed in Qin's opening brief, "depriving [respondent] of the right to participate in appointing the

arbitral tribunal itself evidences substantial prejudice."[2]   Tellingly, Petitioners do not even mention this decision in their opposition brief.  Petitioners' contention that "the selection of arbitrators in this case did not violate CIETAC's rules" (Opp. at 57) ignores this fundamental notice defect.   Indeed, as the District Court itself acknowledged, "[t]he real issue here is not CIETAC's compliance with its own procedures, but rather Qin's alleged failure to receive notice of the pending arbitration.  After all, if Qin did not know about the arbitration in July 2020, he could not have timely selected an arbitrator." A-1063.

There is also no merit to Petitioners' claim that because Qin belatedly obtained actual notice of the arbitration and appeared in the arbitration, Qin was not prejudiced or prevented from meaningfully presenting his case. The underlying arbitration concerned a half-billion-dollar contractual dispute arising out of a complex Chinese corporate structure used to obtain foreign investment capital.  Qin was deprived of the opportunity to submit responsive pleadings and counterclaims, and was afforded mere weeks to prepare a defense.  Qin's view was that the matter required a panel of arbitrators well-versed in complex cross-border investment structures, who would have understood the form and purpose of the transactions at issue in the arbitration.  Qin repeatedly demanded to exercise his right to appoint an

---

[2] *See* Br. at 55-56 (quoting *CEEG (Shanghai) Solar Science & Tech. Co., Ltd. v. Lumos LLC*, 829 F.3d 1201, 1207 (10th Cir. 2016)).

arbitrator with the necessary qualifications but was prohibited from doing so because of a missed deadline on account of the deficient notice purportedly delivered to an address provided by Petitioners in an *ex-parte* submission to CIETAC. Qin repeatedly objected to the composition of the arbitral panel because none of the panelists had any relevant subject-matter experience. Deprivation of the right to have a case heard by a qualified arbitrator renders the proceeding fundamentally unfair. *Move, Inc. v. Citigroup Markets, Inc.*, 840 F.3d 1152, 1158-59 (9th Cir. 2016).

Further, to the extent Petitioners contend on appeal that Qin timely received "actual notice" of the arbitration (*see* Opp. at 4-5, 37), as Qin has shown in his pending Motion to Strike (ECF 56), the issue of actual notice is irrelevant to the merits of this appeal, and was never litigated before the District Court. Petitioners' request that this Court adjudicate the issue of actual notice in the first instance is improper. As this Court has stated, "[f]actfinding is the basic responsibility of district courts, rather than appellate courts, and the Court of Appeals should not resolve in the first instance a factual dispute which has not been considered by the District Court."[3]

Petitioners' astounding invitation to this Court to "look beyond the law" (Opp. at 4) and examine Qin's alleged conduct in *five unrelated proceedings* should also

---

[3] *Harrison v. Republic of Sudan*, 838 F.3d 86, 96 (2d Cir. 2016).

be rejected.  What may have happened in other cases has no bearing on whether Qin was afforded due process in the CIETAC arbitration at issue in this appeal.

Qin did not receive adequate notice of the arbitration and was denied the opportunity to meaningfully present his case.  This Court should therefore reverse the District Court's confirmation of the arbitration award.

## ARGUMENT

## I.  PETITIONERS FAIL TO REBUT QIN'S SHOWING THAT HE WAS NOT PROVIDED WITH NOTICE CONSISTENT WITH DUE PROCESS

### A. Whether Due Process Was Adequate is for United States Courts to Decide, Not CIETAC

Petitioners argue that the Court must defer to CIETAC's determination that the third mailing  (to the North Alley Address) constituted adequate notice so long as that determination was "barely colorable." Opp. at 34-35.  Not only does this misstate applicable law, but it also ignores that (i) CIETAC made no determination as to whether service satisfied U.S. due process requirements, (ii) there is *no* evidence *at all* in the record supporting the arbitrators' conclusion, meaning there is no "barely colorable" justification for it, and (iii) U.S. courts must undertake an independent review regarding whether Qin established a defense under Article V(1)(b) of the Convention as a matter of U.S. due process principles, and cannot defer to any finding by CIETAC on this issue.

Second Circuit precedent could not be clearer that the issue of adequate notice under the New York Convention is a matter of the "application of the forum state's standards of due process," and that due process rights are "entitled to full force under the Convention as defenses to enforcement." *Iran Aircraft Indus. v. Avco Corp., Inc.*, 980 F.2d 141, 145 (2d Cir. 1992). In other words, it is a matter for the enforcing court to decide under the law applicable to the enforcing court's jurisdiction. CIETAC, in determining whether service was proper *under CIETAC rules*, never considered U.S. due process requirements. Yet that is exactly what Petitioners are claiming when they argue that the District Court was required to defer to CIETAC's finding that Qin was properly served. *See* Opp. at 34.

In any event, no decision by CIETAC could ever foreclose independent review by U.S. courts regarding whether, as a matter of U.S. law, Qin established a defense under Article V(1)(b) of the Convention. The Convention's defenses to enforcement would be eviscerated if, as Petitioners contend, a foreign arbitral tribunal can predetermine the merits of those defenses before they are adjudicated by a court in the forum where enforcement is sought.[4] Petitioners cite no authority

---

[4] Petitioners nowhere attempt to reconcile their argument with the extensive case law in this Circuit identified in Qin's opening brief finding an Article V(1)(b) challenge waived when it was not raised before the arbitral panel. Br. at 52 n.16. It cannot both be the case that failure to raise the issue results in waiver and that raising and losing the issue before the panel defeats an Article V(1)(b) defense because of deference.

6

for their position that CIETAC's decision that notice was proper is effectively unreviewable by U.S. courts.

Tellingly, in arguing that CIETAC's determination as to the adequacy of notice should be subject to a "barely colorable" standard of review, Petitioners rely on cases that have nothing to do with due process challenges under the Convention. *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992) (cited in Opp. at 34) and *Reliastar Life Ins. Co. v. EMC Nat'l Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009) (cited in Opp. at 49) concerned the *merits* of an arbitration award, *not* the applicability of defenses under the Convention. *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 34–35 (2014) likewise concerned procedural thresholds to arbitrability, *not* the question of whether notice in the underlying arbitration satisfied U.S. due process requirements.

This Court rejected Petitioners' argument in *Iran Aircraft Industries*, holding that the finality of an arbitration award "merely reflect[s] a contractual intent that the *issues joined and resolved in the arbitration* may not be tried *de novo* in any court." 980 F.2d at 145. This Court then stated that a lack of *de novo* review on the merits "does not bar consideration of the defenses to enforcement provided for in the New York Convention." *Id.* Indeed, numerous cases considering whether an arbitration award violates public policy (another defense to enforcement of a foreign arbitral award under the Convention), have expressly held that arbitrators'

determinations on these issues are not entitled to deference. *See, e.g.*, *New England Health Care Emps. Union, Dist. 1199 v. Serv. Emps. Int'l Union, AFL-CIO, CLC*, 942 F. Supp. 96, 98 (D. Conn. 1996) ("The second factor counseling against deference is that a court must make its own, independent determination about whether an arbitration award violates public policy") (citing *Botany Industries, Inc. v. New York Joint Board,* 375 F. Supp. 485, 491 (S.D.N.Y.1974), *vacated as moot,* 506 F.2d 1246 (2d Cir. 1974) (no weight given to the arbitrator's assumption about the parties' compliance with federal labor law)).  As stated in Qin's Opening Brief, and which Petitioners do not address, the Tenth Circuit has expressly declined to defer to arbitrators on this issue. *See CEEG*, 829 F.3d at 1207 (holding that notice of arbitration proceedings provided by CIETAC did not comply with due process under U.S. law).

The decision in *Olin Holdings Ltd. v. State of Libya*, 2022 WL 864507, at *6 (S.D.N.Y. Mar. 23, 2022), *aff'd* 73 F.4th 92 (2d Cir. 2023) is also instructive.  There, the court made clear that the "barely colorable" standard pertains to merits questions and not Convention defense questions:

> Based on the foregoing, there is "at least a barely colorable justification for the outcome reached, and indeed substantially more.". . . The Award should therefore be enforced *unless Libya can establish that one of the seven exclusive defenses to confirmation and enforcement of an award under Article V of the New York Convention applies*.

*Id.* (internal citations omitted and emphasis added).  The court considered *merits* defenses under the "barely colorable" standard *and then* moved on to the applicability of Convention defenses.

Thus, contrary to Petitioners' contention, the law is clear that the court must make its own, independent determination as to whether Qin has established a defense under Article V(1)(b) of the Convention; CIETAC's determination on the adequacy of notice is not entitled to deference.

### B.  Petitioners Cannot Dispute that Returned Mail Was Not "Reasonably Calculated" to Reach Qin

There is no dispute that CIETAC's first two mailings were returned undelivered. A-1191 and A-1059.  The Supreme Court has held that where a party has actual awareness that notice did not reach its intended recipient, such as when mail is returned undelivered, the notice was not "reasonably calculated" to reach its recipient as a matter of law. *Jones v. Flowers*, 547 U.S. 220, 229-230 (2006). Petitioners attempt to evade this controlling precedent by arguing that the *Flowers* holding only applies to a "tax sale," where the government is trying to take someone's home and "is not relevant to due process in an arbitration." Opp. at 44.

As an initial matter, the *Flowers* court did not premise its holding on the fact that a party was a government entity, but rather on common sense, noting that no one "actually desirous" of reaching someone else by letter would "simply shrug their shoulders" if they knew the letter did not reach its intended recipient. *Id.* at 229.

9

That *Flowers* was a case involving a government party and a private party does not limit the circumstances in which its holding is applicable. Indeed, courts in this Circuit have applied or cited the *Flowers* holding in cases involving private litigants. *See, e.g.*, *Clermont v. Intra-Op Monitoring Servs., LLC*, 2017 WL 2239564, at *5–6 (S.D.N.Y. Mar. 29, 2017) (citing *Flowers* and finding service not reasonably calculated to reach recipient and did not satisfy due process where plaintiff sent process by regular mail to address that plaintiff had actual notice was incorrect); *J & J Sports Prods., Inc. v. Potions Bar & Lounge, Inc.,* 2009 WL 763624, at *1 (E.D.N.Y. Mar. 23, 2009) (noting the requirements of *Flowers* but finding them inapplicable to later service of documents in the same litigation in which the initial service had already complied with due process); *Orix Fin. Servs. v. Phipps*, 2009 WL 30263, at *10 (S.D.N.Y. Jan. 6, 2009) (citing *Flowers* and noting that no mailings in the instant case had been returned as undelivered).

Petitioners do not cite a single case supporting the proposition that parties invoking a defense under Article V(1)(b) of the Convention are entitled to any less due process than the plaintiff in *Flowers.* Indeed, all civil litigants in cases involving property interests have due process rights. "Due process requires that, if a proceeding is going to affect a party's interests, that party should have notice of the action and an opportunity to be heard." *Clermont*, 2017 WL 2239564 at *5 (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The

CIETAC arbitration was a proceeding affecting Qin's interests. Petitioners cite cases that purport to relax service requirements "[i]n cases involving arbitration proceedings" (Opp. at 54), while failing to note that every single one of those cases concerned compliance with the service provision in the Federal Arbitration Act *in actions to confirm an arbitration award*.[5] None of them addressed due process requirements, let alone whether notice in the underlying arbitration complied with due process.

Petitioners cannot manufacture their own relaxed due process requirements. Both the first and second mailings by CIETAC were returned undelivered and thus did not satisfy due process as a matter of law.

---

[5] In *Absolute Nevada, LLC v. Grand Majestic Riverboat Co., LLC*, 646 F. Supp. 3d 426 (S.D.N.Y. 2022), the District Court held that "[e]ven if service of process on [respondent] had been inadequate, the [c]ourt would still conclude it has personal jurisdiction" because "[i]n cases involving arbitration proceedings, '[c]onsiderations of fairness' may excuse improper service" *related to the court proceeding*." In *Vidaplan, S.A., Inc. v. Cipriani Int'l, S.A.*, 2006 WL 8461283. at *5 (S.D.N.Y. Aug. 7, 2006), likewise, the District Court was discussing respondent's contention that "it was *not properly served with either the Petition to Confirm Arbitration* or the Application for an Order of Attachment." (emphasis added). Similarly, in *Matter of Lauritzen Kosan Tankers (Chem. Trading, Inc.)*, 903 F. Supp. 635 (S.D.N.Y. 1995), the District Court found although petitioner's service of process on respondent's "New York attorney did not constitute adequate *service" of petitioner's motion for order confirming arbitration award*, respondent "actually receive notice through its attorney and no injustice result from giving effect to that notice." Lastly, in *Matter of Arb. between InterCarbon Bermuda, Ltd. & Caltex Trading & Transp. Corp.*, 146 F.R.D. 64 (S.D.N.Y. 1993), the District Court was addressing issues related to the *service of process of the court proceeding* in compliance with "Rule 4 of the Federal Rules of Civil Procedure" and "9 U.S.C. §12."

### C. There is No Evidence Supporting Petitioners' Contention that CIETAC's Third Mailing Was Reasonably Calculated to Reach Qin

Petitioners argue that, notwithstanding the defects in CIETAC's first two mailings, the third mailing satisfied due process requirements because it was reasonably calculated to reach Qin and was not returned. Opp. at 8-9. This claim is based on misrepresentations of the record before the arbitral panel and the District Court. Petitioners claim that: (i) the North Alley Address was attributed to Qin in an unrelated Chinese court judgment, (ii) Qin admitted that the North Alley Address was his address, (iii) the addressee at the North Alley Address, Peng Yun, was an authorized agent of one of Qin's co-respondents, and (iv) CIETAC made its own independent determination that two of Qin's co-respondents were properly served at the North Alley Address. Each of these statements is false, as explained below.

### 1. Petitioners' Allegations Regarding a Chinese Court's "Findings" Are False

Petitioners claim that a Chinese default judgment "found" that the North Alley address was "the regular residential and mailing address of [Qin]." Opp. at 22 (citing A-949). The Chinese judgment contains no such finding; indeed Qin was not even a party to that case and never appeared in the lawsuit that resulted in the default judgment. SMI International, which was a party, also did not appear in that lawsuit resulting in the default judgment; indeed, the North Alley Address was "unilaterally provided by the plaintiff of that case." A-949. Petitioners, once again, quote their

own argument and mischaracterize it as a "finding" by the Chinese court. A-949 ("[Petitioners] alleged that the [North Alley Address] is the 'regular residential and mailing address of [Qin] … *There is no factual basis of this statement…*"). The District Court could not have known that, however, because Petitioners never submitted translated versions of the court judgment, which would have made clear that their description of it was false.[6] *See* A-1369-77 (untranslated decision). There is no translated version of the judgement in the record.

### 2. Petitioners' Claim That Qin Admitted The North Alley Address Was His Address Is False

Petitioners claim that the District Court's determination that the third mailing satisfied due process "did not rest on [Petitioners'] own say-so," but rather on "[Qin]'s own admission that a contemporaneous civil action listed North Alley as the address of a company under [Qin]'s control and as [Qin]'s own personal address." Opp. at 47-48 (citing A-949). In fact, this determination *was* based on Petitioners' own say-so and is contradicted by the record. This language in the District Court opinion was taken from Petitioners' brief below stating that "[Qin] attached to his declaration a copy of objections he raised to the arbitral panel, in which he acknowledges that the 2019 case attributes the North Alley Address to SMI

---

[6] Thus, contrary to Petitioners' contention, Opp. at 47, there is nothing contradictory about stating both that Petitioners provided no evidence and that their purported evidence was not translated. Petitioners gave an untranslated document to the District Court, misrepresented its contents, and claimed it was evidence, when in fact the document did not support Petitioners' claims.

International." A-1449 (citing A-948-953). In fact, A-948-953 does not say that. Qin's objections to the arbitral panel merely restated Petitioners' claims about the address followed by this sentence, which was omitted from Petitioners' brief before the District Court: "*There is no factual basis for this statement*." A-949. Qin's objections further stated (in language also omitted by Petitioners) that the address in the Chinese court decision "*was unilaterally provided by the plaintiff of that case. SMI International did not receive the relevant case notice, nor materials delivered to that address. The case was decided in the absence of SMI International*." *Id.* (emphasis added). As noted above, the Chinese court judgment in question (which Petitioners never translated) said nothing about Qin and Qin was not a party to that case.[7]

### 3. Petitioners' Claim That Peng Yun Was a "Service Agent" of a Co-Respondent When CIETAC Delivered Notice Is False

Petitioners claim that Peng Yun (the individual to whom CIETAC's third mailing was addressed to, at the North Alley Address) "was also service agent for another respondent in the arbitration." Opp. at 21-22 (citing A-138). A-138 is a redacted version of the Award, which appears unredacted at A-1191. The Award does not support the above statement and the panel nowhere made this finding. In

---

[7] Further, because SMI International was listed publicly in Hong Kong, its office addresses are a matter of public record. Yet Petitioners failed to present any evidence that those records make any mention of the North Alley Address, and Qin's counsel was unable to locate any reference to that address in those records.

14

fact, the Award states that "the Arbitration Court received [Petitioners'] Letters of Confirmation . . . the letters confirmed that the address for service for the Second Respondent was Peng Yun, at [North Alley], and . . . for the Fourth Respondent, Peng Yun, at [North Alley]." A-138. In other words, Petitioners are quoting the panel's recitation of *their own letters* to CIETAC, which were never disclosed to Qin, never submitted to the District Court, and are not in the record. Further, Chinese public records do not identify Peng as an agent for Qin or any other respondent in the arbitration. *See* Br. at 11-12. Petitioners cite *no* support in the record to support their claim that Peng Yun was an agent of any of Qin's co-respondents in the arbitration when CIETAC's notice was delivered to the North Alley Address.[8]

### 4. Petitioners' Claim That CIETAC Made Its Own Independent Determination That Two of Qin's Co-Respondents Were Properly Served at the North Alley Address Is False

Petitioners claim that "CIETAC found both [SMI International] and [Run Yun Chengdu] had been properly served at North Alley (citing A-138)." Opp at 21. The Award only provides that "the Arbitration Court received [Petitioners'] Letters of Confirmation . . . [which] confirmed that the address … for the Third Qin was [the North Alley Address]." A-1191. Likewise, Petitioners are quoting the panel's recitation of *their own letters* to CIETAC that are not in the record. Indeed, SMI

---

[8] Peng Yun submitted an affidavit in the District Court stating that he was never Qin's agent and that he was formerly a legal representative of Runyun (one of the respondents in the arbitration), but resigned in 2018. A-1302.

International is a Hong Kong company, and SMI International's public filings do not identify any relationship between SMI International and the North Alley Address. A-950-51.[9]

In sum, the record is devoid of any evidence at all tying Qin to the North Alley address. This is not a mere "gap," as Petitioners characterize it, *see* Opp. at 49; there is quite literally nothing. Absent such evidence, all of Petitioners' legal arguments on this point fall away.

Petitioners also purport to rely on this Court's unpublished summary order in *Tianjin Port Free Trade Zone International Trade Service Co. v. Tiancheng Chempharm, Inc. USA*, 771 F. App'x 36 (2d Cir. 2019). Petitioners contend that in *Tianjin*, this Court found due process satisfied where mail was sent to addresses "associated with the respondent," even though it never actually reached the respondent, Opp. at 50-51, referring to it as a "strikingly similar fact pattern." *Id.* at 50. But there is nothing similar about these two cases. In *Tianjin*, the address "associated with the respondent" was the respondent's own listing on the New York Department of State website as the address to which New York will mail process. *Tianjin*, 771 F. App'x at 37. Petitioners consider this fact "irrelevant" because the

---

[9] Given that there is no evidence in the record supporting Petitioners' contention that any corporation in which Appellant had an ownership interest was given proper notice either, Petitioners' attempts to distinguish clear case law drawing a distinction between service on a corporation and service on its shareholders, *see* Opp. at 39, is irrelevant.

North Alley Address was "listed" in "a recent court filing." Opp. at 51. But as noted above, Petitioners' claim that a Chinese default judgment "found" that the North Alley address was Qin's address is false. In any event, a mere alleged reference to an address in a Chinese default judgment is not comparable to registration on the New York Secretary of State's website. Petitioners cite no authority for their contention that a service address that is voluntarily provided by a party on a government registry is just as reliable as a service address provided unilaterally by an *adverse party* seeking a default judgment. *Id.*

Further, as noted above, the Chinese court judgment in question is not even properly in the record given that Petitioners never translated it into English, *see Regeda v. City of New York*, 2015 WL 5751117, at n.2 (E.D.N.Y. 2015) ("The court find's plaintiff's translation is inadmissible without a certification of translation [] and consequently not cognizable on summary judgment").

Where, as here, the record is devoid of any evidence connecting a party to the address where notice was sent, such notice was not reasonably calculated to apprise the other party of the claims against it. *See NYKCool A.B. v. Pac. Int'l Servs., Inc.,* 66 F. Supp. 3d 385, 391 (S.D.N.Y. 2014), *adhered to on reconsideration*, 2015 WL 998455 (S.D.N.Y. Mar. 5, 2015) (service via email not reasonably calculated to reach other party where "there is no evidence that [the party] ever used or checked

that e-mail address . . . or that an e-mail sent to that address would have been brought to his attention.").

Petitioners therefore did not meet their burden on summary judgment to demonstrate the absence of any material issue of disputed fact on the issue of the adequacy of notice to Qin, nor to rebut the evidence supplied by Qin that the North Alley Address was neither his nor could have been reasonably believed to be his. *See Albtelecom SH.A v. UNIFI Commc'ns, Inc*., 2021 WL 1089982, at *2–3 (S.D.N.Y. Mar. 22, 2021) (on a motion for summary judgment seeking confirmation of a foreign arbitral award, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"); *Guang Dong Light Headgear Factory Co., Ltd. v. ACI Int'l, Inc*., 2005 WL 1118130, at *9 (D. Kan. May 10, 2005) (denying confirmation where it found a "genuine issue of material fact[] with regard to … whether [respondent] was accorded proper notice"). The utter absence of any evidence supporting Petitioners' claim that sufficient notice was provided renders the District Court's decision clearly erroneous. *Cornfield v. Cornfield*, 156 F. App'x 343, 344 (2d Cir. 2005) (clear error where "challenged findings lack support in the record.") (citing *Payne v. United States*, 359 F.3d 132, 134 (2d Cir. 2004)); *see also Krizek v. Cigna Grp. Ins*., 345 F.3d 91, 100 (2d Cir. 2003) ("the [district] court may only draw permissible

inferences, which requires at a minimum some evidentiary basis in the record to support the inference").

### D. The Court Should Disregard Petitioners' Inflammatory and Irrelevant Arguments Concerning Actual Notice

As already discussed above and conceded by Petitioners, the notice issue on appeal is whether notice was reasonably calculated to apprise Qin of the arbitration, not whether Qin evaded service. [10] Petitioners' contention that Qin allegedly "dodged" service in the underlying arbitration is irrelevant and relies improperly on evidence that was not part of record before the District Court. "[A]bsent extraordinary circumstances, federal appellate courts will not consider rulings or evidence which are not part of the trial record." *Int'l Bus. Machs. Corp. v. Edelstein*, 526 F.2d 37, 45 (2d Cir. 1975). None of these claims nor "supporting" materials were before the District Court in deciding the orders on appeal and are not properly before this Court. This Court should ignore their inclusion and reverse the District Court based on the law and the record properly before it.[11]

---

[10] Further, it is improper for Petitioners to cast aspersions regarding Qin's character, and then ask this Court not to credit Qin's contentions regarding when he learned of the arbitration because of his supposedly untrustworthy character. Such "propensity evidence" is inadmissible. *See* Fed. R. Evid. 404(a); *United States v. Hill*, 658 F. App'x 600, 603 (2d Cir. 2016) ("Propensity evidence is not admissible to prove that on a particular occasion a defendant acted in accordance with a character trait.").

[11] Petitioners inappropriately quoted statements that were not even in their own Supplemental Appendix and Sealed Supplemental Appendix. For example, "the District Court held there is 'a reasonable doubt about transfer of assets between' [Appellant] and his wife." (citing Dkt. 296 at 5 and Dkt. 237-1 at 37L1-3; 85:4-8). Indeed, all "Dkt" citations in Petitioners' Opposition appear

**II.   THE JUDGMENT SHOULD BE VACATED BECAUSE QIN WAS PREJUDICED BY DEFICIENT NOTICE; PETITIONERS' ARGUMENTS TO THE CONTRARY FAIL**

As explained in Qin's opening brief, the plain language of Article V(1)(b) does not require a showing of prejudice when a party can demonstrate that it was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings. *See* Br. at 50.  Petitioners have no answer to this, instead misdirecting the Court in their Opposition to cases concerning compliance with the service requirements of the Federal Arbitration Act in actions to *enforce* arbitration awards, *not* cases concerning the propriety of notice in the underlying arbitrations. *See* Opp. at 53, *compare supra* at 13-14.

Nor do Petitioners even mention, let alone address, nearly all of the cases cited in Qin's opening brief in which courts declined to enforce arbitral awards under the Convention where procedural defects compromised parties' right to nominate arbitrators or the process by which arbitrators are selected. *See, e.g.*, *CEEG*, 829 F.3d at 1207-08 (CIETAC award unenforceable where defective notice caused respondent to miss deadline to appoint an arbitrator, stating that "depriving [respondent] of the right to participate in appointing the arbitral tribunal itself

---

to be documents not contained in Appellant's Appendix nor Petitioners' Supplemental Appendix and Sealed Supplemental Appendix.

evidences substantial prejudice."); *Millers Mut. Fire Ins. Co. v. Pinnacle Underwriters Mgmt. Assocs., Ltd.,* 2002 WL 424579, at *1 (N.D. Tex. Mar. 15, 2002) (staying arbitration where arbitrator selected by the parties could not travel for 4-6 weeks to oversee arbitration, stating that "[t]he situation here invokes the 'valuable' right to select an arbitrator"); *Stef Shipping Corp. v. Norris Grain Co.,* 209 F. Supp. 249, 253 (S.D.N.Y. 1962) ("The Right to appoint one's own arbitrator [] is of the essence of tripartite arbitration[.]").

Petitioners only attempt to distinguish *Encyclopedia Universalis SA v. Encyclopaedia Britannica, Inc*., 403 F.3d 85, 91 (2d Cir. 2005) by noting that it was decided under Article V(1)(d) rather than V(1)(b). *See* Opp. at 57. But regardless of which provision of the Convention was invoked in that case, the Second Circuit therein acknowledged the importance of arbitrator selection to the integrity of the arbitral process. The same concerns underlay the on-point decision in *CEEG*, in which the Tenth Circuit found, under Article V(1)(b), that denial of a respondent's ability to participate in the arbitrator selection process on account of a lack of notice constitutes prejudice *as a matter of law*:

> Hindering the right to participate in the panel-selection process is not a minor procedural misstep. The arbitral tribunal determines the parties' rights with virtually no possibility of appeal or review … We agree with the district court that depriving [respondent] of the right to participate in appointing the arbitral tribunal itself evidences substantial prejudice.

21

*CEEG*, 829 F.3d at 1207-08.  The facts in this case compel the same result.

As a last resort, Petitioners argue that Qin was not prejudiced by the lack of due process because Qin did ultimately learn of the arbitration (approximately four months after CIETAC purportedly served him in June 2020) and appeared. Opp. at 53.  But just because Qin was able to participate belatedly in the arbitration is not the same thing as being meaningfully able to present his case, as is required under Article V(1)(b) of the Convention.  As previously explained in Qin's opening brief, this was a half-billion-dollar contractual dispute related to a complex corporate structure known as a Variable-Interest Entity ("VIE") used in China to facilitate foreign investment. A-1205-1212 and A-936.  On account of the late notice, and even with the short extension granted by the panel, Qin was unable to submit responsive pleadings or assert counterclaims, and was given only weeks to prepare and present his case, which other courts have found constitutes prejudice. *See Shafii v. Brit. Airways*, 872 F. Supp. 1178, 1181 (E.D.N.Y.), *aff'd*, 71 F.3d 404 (2d Cir. 1995) ("The courts consider an arbitration proceeding fair if, [among other things], each party has had "sufficient opportunity to prepare its case …") (citation omitted).

The panel issued a decision holding Qin personally liable for debts of companies that had guaranteed a contract and that, under the VIE arrangement, Qin no longer controlled. A-1250 and A-936.  Not a single arbitrator on the panel had any experience with the complex financial transactions at issue. A-927-931.

Pursuant to the parties' agreement, Qin had a right to select an arbitrator, and he was denied that right solely because CIETAC and Petitioners did not provide adequate notice of the proceeding.

Qin repeatedly objected to CIETAC that none of the panelists had the requisite qualifications to arbitrate a dispute of this complexity, and repeatedly attempted to nominate a qualified arbitrator. A-935-37 and A-951-953. The only circuit to have addressed the issue of non-qualified arbitrators has found that adjudication by unqualified arbitrators is not "fundamentally fair" and constitutes prejudice. *Move, Inc. v. Citigroup Glob. Markets, Inc.*, 840 F.3d 1152, 1158-59 (9th Cir. 2016). In that case, the complaining party "believed that arbitration of a complex securities claim required a chairperson with the requisite experience to understand and interpret sophisticated legal concepts" and "struck . . . candidates from the proposed roster who were not experienced attorneys." *Id.* at 1158. Because one of the candidates had falsified his credentials, however, he ended up on the panel despite not being qualified. *Id.* The other party claimed, as Petitioners do here, that there was no evidence that a single arbitrator could have impacted the decision.[12] The Ninth Circuit rejected that argument, finding that "it is difficult if not impossible to

---

[12] Petitioners' claim that the decision was unanimous is unsupported by the record. Opp. at 56 n.4. Petitioners cite to A-141, which nowhere says the decision was unanimous, but rather only that the "panel" has made a determination. CIETAC rules do not require dissenting opinions. A-454; thus if two arbitrators agree, that is the decision of the panel.

measure the impact that one member's views have on the process of collective deliberation." *Id.* at 559. Moreover, the presence of even a single qualified arbitrator as Qin had the right to appoint could have swayed the other two.

For all of these reasons, Qin was prejudiced because he was denied the right to appoint an arbitrator.

## **CONCLUSION**

Nothing in Petitioners' Opposition rebuts the clear evidence that all three of CIETAC's mailings did not satisfy due process. Nothing in Petitioners' Opposition rebuts the clear evidence that Qin was denied his right to nominate an arbitrator and was prejudiced thereby. The District Court's confirmation of the award must therefore be reversed.

Dated: November 10, 2023

<div style="margin-left: 40%;">

Respectfully submitted,

/s/ Amiad M. Kushner
AMIAD M. KUSHNER
XINTONG ZHANG
SEIDEN LAW LLP
322 Eighth Avenue, Suite 1200
New York, New York 10001
(646) 766-1914

*Attorneys for Respondent-Appellant*

</div>

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the limits of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts exempted by Fed. R. App. P. 32(f), this document contains 5,236 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally-spaced font using Microsoft Word 2010, namely, Times New Roman, font size 14.

Dated: New York, New York
     November 10, 2023

                          /s/Amiad Kushner
                          Amiad Kushner