# 23-0747-cv

# United States Court of Appeals

### *for the*

# Second Circuit

HUZHOU CHUANGTAI RONGYUAN INVESTMENT
MANAGEMENT PARTNERSHIP, HUZHOU HUIHENGYING
EQUITY INVESTMENT PARTNERSHIP, HUZHOU HUIRONGSHENG
EQUITY INVESTMENT PARTNERSHIP,

*Petitioners-Appellees,*

– v. –

HUI QIN,

*Respondent-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## PETITIONERS'-APPELLEES' OPPOSITION
## TO MOTION TO STRIKE

GEOFFREY SANT
ANDREW C. SMITH SR.
PILLSBURY WINTHROP SHAW PITTMAN LLP
*Attorneys for Petitioners-Appellees*
31 West 52nd Street
New York, New York 10019
(212) 858-1000

# TABLE OF CONTENTS

I.  INTRODUCTION ..........................................................................................1

II. ARGUMENT................................................................................................5

    A.    The Supplemental Appendix is Part of the District Court
            Record and Can Be Considered on Appeal...........................................5

    B.    The Challenged Materials Are Relevant to the Appeal .......................9

            1.    Section C1 ...................................................................................10

            2.    Section C2 ...................................................................................12

            3.    Section C3 ...................................................................................13

            4.    Section C4 ...................................................................................14

            5.    Section C6 ...................................................................................14

            6.    Section D.....................................................................................15

            7.    Section E .....................................................................................17

            8.    Section F .....................................................................................17

    C.    Independent Grounds Support Consideration of the Challenged
            Materials ...............................................................................................19

    D.    Qin Never Explains Why He Concealed Evidence From This
            Court.....................................................................................................22

III. CONCLUSION............................................................................................23

i

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ashley v. City of New York*,
　992 F.3d 128 (2d Cir. 2021)...................................................................................8

*Bahrami v. Ketabchi*,
　365 Fed. Appx. 266 (2d Cir. 2010)....................................................................21

*Carroll v. United States*,
　267 U.S. 132 (1925).............................................................................................20

*Colbert v. Potter*,
　471 F.3d 158 (D.C. Cir. 2006)...........................................................................20

*Dixon v. von Blanckensee*,
　994 F.3d 95 (2d Cir. 2021).................................................................................22

*Gorelik v. Gorelik*,
　443 F. App'x 586, (2d Cir. 2011) ......................................................................21

*In re AOV Indus.*,
　797 F.2d 1004 (D.C. Cir. 1986) .........................................................................20

*Int'l Bus. Machines Corp. v. Edelstein*,
　526 F.2d 37 (2d Cir. 1975)...................................................................................6

*Mitchell v. City of New York*,
　841 F.3d 72 (2d Cir. 2016).................................................................................19

*Olsen v. Pratt & Whitney Aircraft*,
　136 F.3d 273 (2d Cir.1998).................................................................................19

*U.S. ex rel. Drake v. Norden Sys., Inc.*,
　375 F.3d 248 (2d Cir. 2004)................................................................................8

*United States v. Ayer*,
　857 F.2d 881 (1st Cir. 1988)..............................................................................20

ii

*United States v. Canieso*,
   470 F.2d 1224 (2d Cir. 1972)..................................................................20

*Van Buskirk v. United Group of Cos., Inc.*,
   935 F.3d 49 (2d Cir. 2019)......................................................................8

## Statutes

United States Code
   Title 28, Section 1653 ..............................................................................8
   Title 28, Section 2111 ............................................................................19

## Rules and Regualtions

Federal Rules of Appellate Procedure
   Rule 10(a)...........................................................................................5, 6

Petitioners-Appellees Huzhou Chuangtai Rongyuan Investment Management Partnership, Huzhou Huihengying Equity Investment Partnership, and Huzhou Huirongsheng Equity Investment Partnership ("Petitioners" or "Appellees") respectfully submit this opposition to Respondent-Appellant Hui Qin's ("Qin") Motion to Strike Appellees' Supplemental Appendix and Portions of Appellees' Brief ("Motion to Strike" or "Motion").

## I.     INTRODUCTION

Qin seeks to strike evidence showing that he received actual notice, that his denials of notice are false, and that the mailings were "reasonably calculated" to provide notice.

Qin argues that three mailings to his three addresses (locations at which Qin "previously resided or used" (Motion at 7; Dkt. 134 at 4)) – including Qin's "home" and his "registered address" – were not "reasonably calculated" to give him notice of the arbitration. The following facts show that these three mailings were "reasonably calculated" to put Qin on notice – and Qin seeks to strike all of them:

- 89 court judgments each identify the Building Address as Qin's domicile.

- Qin's Divorce Decree states the Building Address is Qin's home.

- Qin testified that Jiangtai Road is his "home" where he went from time to time to pick up his stuff.

- Qin falsely told this Court that Qin was not in China in 2019.

- Qin evaded or denied service in five proceedings, including in *this* Action.

- Qin has falsely claimed, four times, to be the victim of forgers to evade service.

- Five courts have found Qin not credible.

Each of these facts is directly relevant to service. They show that Qin's appeal is knowingly frivolous. Qin denies none of these facts, not in this Motion and not in Qin's reply brief (Appellate Dkt. 69, "Reply").

Qin's Motion should be denied for three reasons.

First, the challenged materials are part of the District Court record and may be considered by this Court. Second, the challenged materials are relevant to the core issue on appeal: whether service at three addresses associated with Qin were "reasonably calculated" to put Qin on notice of the arbitration. Third, even if these facts were somehow not part of the record, Qin's attempt to deceive the District Court and this Court constitutes "extraordinary circumstances" such that this Court should consider these materials.

In his appellate brief ("Appeal") made knowingly false statements, such as this one:

> [A]s Qin told the arbitrators and the District Court, he *was* a party to other ongoing civil litigation in China for which his counsel *was* identified. . . . Yet Petitioners made no attempt to effect service . . . at the address that actually was associated with him in a Chinese civil court case.

2

Appeal, 43 (original emphasis). Here, Qin falsely asserts (to this Court) that Petitioners "made no attempt" to serve Qin at any address "associated with him in a Chinese civil court case." But the first location served (Building Address) *is associated with Qin in 89 Chinese civil court judgments*. Not only did Qin mislead this Court, Qin also concealed from this Court the 89 judgments.

Qin now seeks to strike the 89 judgments that Petitioners identified to this Court. Qin's position, in sum, is that he can conceal key information from this Court, make false representations by concealing this information, and then strike Petitioners' correction of the record.

And again:

> Qin stated in an unrebutted affidavit that Petitioners had *actual notice* that he had moved out of China altogether and relocated to the United States in 2019…. Courts have … held that service to an address that is *known* to be wrong does not satisfy due process standards, even where the address used is still the address of record.

Appeal, 38 (original emphasis). Here, Qin (i) falsely claims he was living in the U.S. in 2019; (ii) falsely claims Petitioners had "*actual notice*" of this untrue statement; (iii) falsely calls this assertion "unrebutted"; and (iv) urges this Court to reverse based on this falsehood.

Qin now seeks to strike Petitioners' correction of the record, including that Qin testified that he was living in China in 2019. Qin conceals evidence,

3

misrepresents the truth, and then claims that Petitioners cannot include additional portions of the record to correct these misrepresentations.[1]

The challenged Supplemental Appendix contains materials submitted to the District Court prior to its March 31, 2023 order denying the motion for reconsideration. The evidence is part of the record. Yet, even if it were not, Qin's falsehoods constitute "extraordinary circumstances" warranting consideration of these materials.

The challenged evidence is all relevant. The District Court's conclusion that service was "reasonably calculated" to provide notice was based upon a holistic review of the efforts made to serve Qin, including service at three addresses associated with him. As the Court held: "Under the circumstances, mailing the notice papers to the Building Address, the Jiangtai Road Address, and the North Alley Address was 'reasonably calculated' to apprise Respondent of the proceedings." Dkt. 134 at 12 (internal citations omitted).

Qin's Motion insists he does not "dispute that the first two mailings [the Building Address and Jiangtai Road] went to addresses where Appellant had

---

[1] Qin's Reply likewise repeats other falsehoods asserted before the District Court. *Compare* Dkt. 67 (Reply) at 3 ("Qin was deprived of the opportunity to submit responsive pleadings and counterclaims") *and* 22 ("Qin was unable to submit responsive pleadings or assert counterclaims") *with* A-1193, 1205-1212, 1218-1220 (Award) (detailing Qin's pleadings, arguments and evidence presented in the arbitral proceedings).

4

previously resided or used for legal purposes." Motion at 7. And the Arbitral Panel found service at North Alley to be successful. A-1191. Indeed, the one section Qin does not move to strike (C5) cites a decision from a Chinese court noting the North Alley Address to be "the regular residential and mailing address of Qin, Hui." Brief for Petitioners-Appellees ("Appellees Br."), 22 (citing A-949).

This Court should deny Qin's Motion.

## II.    ARGUMENT

### A.    The Supplemental Appendix is Part of the District Court Record and Can Be Considered on Appeal

This Court may consider any documents filed in the District Court and the parties have substantial control over what is submitted on appeal. The Federal Rules of Appellate Procedure define the record of appeal as including all papers and exhibits filed in the district court:

> Composition of the Record on Appeal. The following items constitute the record on appeal:
>
> (1) the original papers and exhibits filed in the district court;
>
> (2) the transcript of proceedings, if any; and
>
> (3) a certified copy of the docket entries prepared by the district clerk.

Fed. R. App. P. 10(a) ("FRAP"). Qin's own authority makes clear that the parties control the creation of the record:

> Under the Federal Rules, . . . the parties on appeal have the right to submit to the appellate court, for its consideration, those parts

of the trial record which they choose to challenge or defend on review. The policy that it is the appealing parties, and not the trial court, who control the issues to be presented on appeal has been embodied in federal practice since the Federal Rules were adopted in 1938. . . .

On the basis of this policy, district courts have refrained from exercising any degree of control over the contents of the trial record, even where parties have petitioned the trial court to exclude certain items from the record.

*Int'l Bus. Machines Corp. v. Edelstein*, 526 F.2d 37, 45-46 (2d Cir. 1975) (footnotes and citations omitted) (cited by Qin in Motion at 3, 8). The challenged documents in the Appellees' Supplemental Appendix are all "papers . . . filed in the district court" under FRAP 10(a). All documents in the Supplemental Appendix were submitted to the District Court prior to the District Court's March 31, 2023 Reconsideration Order. *See* Supplemental Appendix at xi (last exhibit dated March 9, 2023).

Qin argues that, absent "extraordinary circumstances," documents must be presented to the District Court in order to be considered on appeal. Even if correct, this is irrelevant. Every challenged document was submitted to the District Court:

- On October 13, 2022, Petitioners filed their investigator's affidavit describing how he followed Qin from Applegreen Mansion and served Qin, whereupon Qin flung the service papers from his Rolls Royce into the street. Dkt. 52 at 2-3. This predates Qin's motion for reconsideration.

- On January 20, 2023, the Court reviewed Qin's invoices from his counsel *in camera*. *See* Dkt. 100. These invoices reveal that Qin had actual notice

6

of this Action upon being served at Rector Place, but that Qin returned this mailing, evaded service, and pretended not to have notice until personally served in his Rolls Royce. The invoices also reveal Qin's counsel misled the District Court, falsely claiming counsel was first engaged on January 4, 2022 (nearly one month after time entries began).

- On January 20, 2023, Petitioners informed the Court that dozens of court judgments identified the Building Address as Qin's:

PETITIONERS: [T]he public records that they finally produced belatedly after all briefing is over . . . directly[] . . . contradict[ed] the very factual statements they asserted in the motion for reconsideration. . . . [O]ver 50 different court judgments . . . all finding . . . that the [B]uilding [A]ddress is his address. And they withheld that not because they needed a Protective Order, but apparently because they just didn't want to turn it over. . . .

THE COURT [TO QIN'S COUNSEL]: Are you disputing that?

QIN'S COUNSEL: [I]t's true, we didn't need the Protective Order for them.

1/20 Tr. at 21:12-22; 36:5-9.

- On March 9, 2023, Petitioners submitted certified translations of three exemplar court judgments identifying the Building Address as Qin's. *See* Dkt. 127, Exs. 8-10. The 2020 *Zheyue Asset Management* case held that in 2018 Qin specifically listed the Building Address as his "judicial service address … to accept litigation documents." Appellees' Br., 17.

7

- On February 14, 2023, Petitioners submitted Qin's January 30, 2023 deposition testimony, in which Qin testified Jiangtai Road is "my home," which he visited "from time to time to pick up my stuff," and that "I burnt euros and dollars in my Beijing home." Qin also testified he lived in China in 2019 (contrary to his sworn assertions in this Action). *See* Dkts. 111, 108-11. Petitioners informed the Court of three judgments each finding Qin made false claims of forgery, and five judgments finding Qin not credible. Dkt. 111.

These documents were all submitted prior to the Court's March 31, 2023 ruling on the reconsideration motion.

Nevertheless, this Court has repeatedly held that the entirety of the record may be reviewed on appeal. *See*, *e.g., Ashley v. City of New York*, 992 F.3d 128, 142 (2d Cir. 2021) (with regard to alleged jury instruction error, "[w]e reverse only if, "based on a review of the record as a whole, ... the error was prejudicial or the charge was highly confusing") (quoting *Hudson v. New York City*, 271 F.3d 62, 68 (2d Cir. 2001); *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 55 (2d Cir. 2019) (under 28 U.S.C. §1653, "appellate courts have discretion to consider the entire record to determine whether there is subject matter jurisdiction"); *U.S. ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004) ("we must review the dismissal [for failure to prosecute] in light of the record as a whole").

The challenged documents were part of the record before the District Court below and therefore may be considered.

### B.     The Challenged Materials Are Relevant to the Appeal

Qin baldly claims the challenged material is "irrelevant to this appeal." Motion at 7. In fact, each challenged section of Appellees' brief is relevant.

As stated by Qin: "In this appeal, this Court is being asked to review two District Court orders addressing whether two mailings by a Chinese arbitral panel [first, to the Building Address, and the second to Jiangtai Road and North Alley] were reasonably calculated to provide [Qin] with adequate notice of an arbitration." Motion at 4.

Sections C1-4 and C6 show (through citations to the Supplemental Appendix) that these three addresses are Qin's, and that Qin actively hid proof that these addresses are his. Service at these addresses was "reasonably calculated" to provide Qin with notice, and in fact did provide Qin with notice.

Sections D-F show Qin received actual notice but lied about it. Appellees' Br., 23-34. Qin falsely claims the "District Court considered no evidence of and made no findings concerning whether any of the mailings provided Appellant with *actual notice*." Motion at 5. To the contrary, the Court held:

> Petitioners argue . . . Respondent had actual notice of the arbitration because he appeared and participated in the proceeding and because he shared counsel with the other Arbitral Respondents (including his wholly-owned company SMI Shengdian), who were served

9

successfully. . . . Ultimately, Petitioners' legal analysis is the correct one.

3/31/2023 Order at 10.

Petitioners also submitted other evidence of actual notice, including Qin's testimony that Jiangtai Road is "my home" and that the Building Address is Qin's address for judicial service. This is the very evidence Qin now seeks to exclude.

Qin claims Petitioners must not present evidence that Qin actually received notice. But Qin's Appeal argues that "Qin did not receive Petitioners' notice of arbitration." Appeal, 49. Qin denies receiving notice, but insists Petitioners are not permitted to submit evidence from the record demonstrating otherwise.

The Court found "good reason" to disbelieve Qin's denials of actual notice: "Petitioners give the Court good reason to question the veracity of Respondent's assertions … including the fact that numerous contemporaneous documents in other actions attribute the Building Address to Respondent…. Respondent does not contest that the Building Address remains his 'registered address' to this day…" 3/31/2023 Order at 3 n.2.

The challenged materials are relevant to the appeal and may be considered by this Court.

### 1. Section C1

Section C1 describes 89 court judgments that identify the Building Address as Qin's domicile. Appellees Br., 16-18. A court judgment from 2020 (the same year

10

as the Arbitration) states that Qin listed the Building Address as his "judicial service address . . . to accept litigation documents" in 2018. *Id.* at 17.

These judgments contradict Qin's false assertion that "Petitioners made no attempt to effect service . . . at the address that actually was associated with him in a Chinese civil court case." Appeal, 43. In fact, Petitioners served the address associated with Qin in 89 Chinese civil court judgments. Qin's Appeal even claims:

> [S]ources open to the public show that the second respondent, Mr. Qin Hui, has had cases in court in the past two years, and has been represented by an attorney in the court proceedings. The complainant chose not to use such public information, . . . [instead] providing an undeliverable address on purpose.

Appeal, 18 (quoting A-948-49). This false claim that Petitioners served "an undeliverable address on purpose" is contradicted by Petitioners' evidence showing service at Qin's registered address (Building Address). The Building Address is the address that Qin listed for judicial service, the address in the underlying contract, and the address listed in 89 court judgments.

In his Motion, Qin now states he does not "dispute that the first two mailings [Building Address and Jiangtai Road] went to addresses where Appellant had previously resided or used for legal purposes," Motion at 7. But in his *Appeal*, Qin had called this doubtful: "In any event, *regardless of whether CIETAC ever sent notice* to Qin at the Building Address…" Appeal, 22 (emphasis added). Qin initially questioned whether notice was "ever sent" to the Building Address, but now seeks

11

to strike evidence that notice was sent to Qin at the Building Address by claiming it is undisputed.

Indeed, the Appeal quotes Qin's sworn declaration that "I never received the Notice of Arbitration at either [North Alley or the Building Address] because neither was my address." Appeal, 21. Now, Qin's Motion improperly seeks to strike the evidence that Petitioners presented to correct Qin's misrepresentation.

### 2. Section C2

C2 explains that Qin purposefully withheld documents contradicting Qin's denial of service. Appellees' Br., 19-20. Petitioners served document demands on Qin on October 31, 2022. But Qin withheld the court judgments (proving the Building Address is Qin's address) for months, until after briefing on the motion for reconsideration.

In sanctioning Qin for discovery misconduct, the District Court also criticized Qin's counsel for filing a motion for reconsideration contradicted by the 89 court judgments (which Qin's counsel withheld until after briefing ended). The District Court observed that Qin's counsel has "no excuse for not conducting a thorough investigation," through which they "would have seen numerous contemporaneous records attributing those addresses to [Qin]"; the "Court hopes … that the firm acted with limited information rather than bad faith." 4/18/2023 Order, 24:23-25:3; 26:11-15.

Yet Qin's counsel concealed these exact same judgments from *this Court* in this Appeal – even though the Appeal was filed three months after the sanctions order – and now improperly seeks to strike them from the appellate record altogether.

The District Court "hope[d]" that Qin's counsel had failed to inform the District Court of the 89 court judgments due to "limited information rather than bad faith." Three months later, in the Appeal, Qin's counsel concealed the 89 judgments from this Court. Qin's counsel cannot excuse this decision based on "limited information." What explanation is left?

### 3. Section C3

Qin's Divorce Decree, obtained the same month as the arbitration hearing, identifies the Building Address as Qin's address. Appellees' Br., 20. Thus, "at the time Qin was contesting service at the Building Address in the Arbitration, Qin confirmed the Building Address as his legal contact address in a legal document." *Id*.

Qin now claims there is "no dispute" that Qin "previously resided or used" the Building Address (and Jiangtai Road). But the Appeal cites and relies upon Qin's previously submitted sworn testimony that the Building Address was not "my address," and that Qin "had not lived at this address since 2003." Appeal, 21 & n.8. These statements are contradicted by Qin's identifying of the Building Address in his *2020* Divorce Decree, obtained *during* the Arbitration.

13

### 4. Section C4

Petitioners cite Qin's sworn testimony that the Jiangtai Road Address is Qin's "home" where he would regularly "pick up my stuff." Appellees' Br., 21. This testimony was presented to the District Court on February 14, 2023. *Id*. This testimony demonstrates that service to this address (along with the other two) was "reasonably calculated" to provide Qin notice.

### 5. Section C6

Qin falsely asserts in the Appeal, half-a-dozen times, that Qin was living outside of China in 2019:

> Qin stated in an unrebutted affidavit that Petitioners had *actual notice* that he had moved out of China altogether and relocated to the United States in 2019 …. Courts have … held that service to an address that is *known* to be wrong does not satisfy due process standards, even where the address used is still the address of record.

Appeal, 38 (original emphasis); *see also id*. at 1 ("In 2019, as Petitioners … knew, Qin moved to New York"); 15 ("Petitioners knew he was living in the United States … since 2019 …, a contention unrebutted by Petitioners"); 16, 17, 20, 21 (each similar); 26 ("Further, and significantly, Qin submitted a sworn declaration stating that Petitioners knew that at the time they initiated the arbitration that Qin had left China and was residing in New York"); 41 (similar).

These statements are all false. Qin testified in this Action that he was living *in China* throughout 2019 and that he met with Petitioners *in China* in 2019 and 2020. Qin likewise swore (in a different New York action) that he was living *in*

14

*China* in 2019; Qin even brought a counterclaim for fraud and misrepresentation because "Qin was in China at all relevant times." Petitioners first presented information to the District Court on November 10, 2022. *See* Dkt. 72, 2; *see also* Dkt. 82, 11 (presenting same facts in opposition to the motion for reconsideration).

Qin knowingly misled this Court, concealed Qin's own contrary testimony, claimed Qin's false assertion was "unrebutted," and falsely told this Court that Petitioners had "*actual notice*" and had "*known*" Qin was living in the U.S. Qin even urged this Court to reverse based on this falsehood. *See* Appeal, 38 ("service to an address that is *known* to be wrong does not satisfy due process standards"). Now, Qin seeks to strike Petitioners' correction of the record.

### 6.    Section D

Section D reveals Qin's evasion of service in this and other actions. Appellees' Br., 23-31. Petitioners showed that, in this Action, Petitioners' initial service (to Rector Place) gave Qin notice because Qin immediately engaged counsel in this Action. *Id.*, 24. Despite receiving notice, Qin returned the mailing and pretended not to have received notice until he was personally served a month later. *Id*.

This history contradicts Qin's claim that "mailed service that is returned" cannot be "reasonably calculated" to provide notice because "the sender is aware that the other party did not receive it." Reply, 1. In this Action, Qin returned the

service documents, pretended not to have notice, and evaded physical service for weeks. There is no reason to credit Qin's claim that he "did not receive" the returned arbitration mailings.

Qin's wife and his counsel also made false service denials on Qin's behalf. Appellees' Br., 25-27. Qin's wife denied service at Applegreen Mansion, even though Qin was personally served while leaving Applegreen Mansion, and even though Qin's tax return identifies it as his home address. *Id.*, 25-27. Qin's wife denied service at the Plaza Hotel penthouses, despite Qin later admitting to living there. *Id.*, 25. Qin's counsel denied service at Rector Street, even though time entries began on the day service was delivered to Rector Street. *Id*., 27-29.

Qin's history of using close contacts to falsely deny service is relevant because Qin now uses his close contact Peng Yun to deny service at North Alley.

Section D relies principally on citations to Qin's own Appendix. *Id.* Nevertheless, Qin seeks to strike this damning evidence. It shows that, according to Qin, apparently there is nowhere that Petitioners could serve him that would be "reasonably calculated" to provide him with notice. In the U.S., Petitioners attempted service at four locations – all now proven to be addresses associated with Qin – and Qin dodged service at each one, only to finally be served by Petitioners' investigators in Qin's Rolls Royce.

### 7. Section E

Qin frivolously told the arbitral panel, the District Court, and even this Court that Qin "disputed the authenticity of the address in the Supplemental Agreement." Appeal, 21 n.8. Qin initially claimed "he did not write it into the agreement." *Id*. Qin's history of *four* false forgery claims is thus relevant. Appellees' Br., 31-32. Apparently abandoning his unbelievable forgery claim, Qin now states that "no party disputed" that "the first mailing" to the Building Address "went to the notice address that appeared in the underlying contract as once associated with Appellant." Motion at 5. But then why did Qin tell the arbitral tribunal and District Court that an "unknown hand" forged this address into the contract?

### 8. Section F

Section F discusses the District Court's findings that Qin lacks credibility. Appellees' Br., 32-34.

Qin's Appeal overwhelmingly relies on Qin's credibility. *See* Appeal, 15 (Qin's "sworn Declaration"; "Qin averred"); *id*., 19 ("Qin submitted two sworn statements"); 21 ("Qin's sworn statement); 26 ("significantly, Qin submitted a sworn declaration"); 41 ("Qin swore").

The Court repeatedly found Qin lacks credibility. *See, e.g.,* Dkt. 134, 3 n.2 ("Petitioners give the Court good reason to question the veracity of Respondent's assertions in connection with this motion, including the fact that numerous

17

contemporaneous court documents in other actions attribute the Building Address to Respondent."). The District Court found in *January 2023* that Qin's sworn testimony "defies belief." Appellees' Br., 32 (citing SA-360-361).

In its March 31, 2023 denial of Qin's motion for reconsideration, the Court noted that Qin had repeatedly violated the Court's discovery orders. *See, e.g.,* Dkt. 134, 5 ("in the months following the Court's summary judgment decision, Respondent has repeatedly resisted Petitioners' discovery requests and has produced little responsive information"). The Court found Qin's disobedience relevant because it speaks to Qin's lack of credibility and his willingness to thwart legal proceedings—as he does by falsely denying service.

As discussed above, this Court can consider the totality of the record, not merely those court orders predating the Court's decision on the motion for reconsideration. In any case, the court orders postdating the motion for reconsideration refer to Qin's conduct prior to March 31, 2023. For example, on August 17, 2023, the Court found Qin in contempt, holding that Qin "lied to me and he has lied at his deposition." *See* 8/17/2023 Order at 101:13-15. This references a deposition that began on January 30, 2023. *See also id*. ("So I do find that there are violations of my *prior* discovery orders, and I also find that he is [in] contempt.") (emphasis added); Dkt. 243, 1 (8/24/2023 Order finding that Qin "violated each and every one of this Court's discovery orders, *beginning with the Court's November 1,*

18

*2022 Order…*") (emphasis added). The Court's retrospective orders find that Qin lacks credibility based on conduct preceding the March 31, 2023 Order.

**C.    Independent Grounds Support Consideration of the Challenged Materials**

Petitioners also cited the challenged materials to demonstrate, among other things, that Qin could not have been prejudiced by any asserted defect in service, because in fact Qin received notice and his denials were not credible. The federal harmless error statute expressly authorizes this Court to examine the record to determine whether any error, if it exists, is harmless: "On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." 28 U.S.C. § 2111. That mandate does not limit the parts of the record that this Court may review.

Consistent with that mandate, this Court has stated, "it is well-settled that [this court] may affirm on any grounds for which there is a record sufficient to permit conclusions of law, including grounds not relied upon by the district court." *Mitchell v. City of New York*, 841 F.3d 72, 77 (2d Cir. 2016) (quoting *Holcomb v. Lykens*, 337 F.3d 217, 223 (2d Cir. 2003)) (internal quotation marks and citation omitted); *see also Olsen v. Pratt & Whitney Aircraft*, 136 F.3d 273, 275 (2d Cir.1998). Accordingly, in determining the absence of any reversible error, this Court may review the entirety of the record.

19

As an illustration of this principle, the Supreme Court has endorsed review of the record of a subsequent trial to evaluate the propriety of a prior ruling on a motion to suppress. *Carroll v. United States*, 267 U.S. 132, 162 (1925); *see United States v. Canieso*, 470 F.2d 1224, 1226 (2d Cir. 1972) (citing *Carroll*: "[i]t is settled law that the validity of an arrest or search can be supported by evidence which was adduced at trial even though this was not presented at the pretrial suppression hearing"). The Supreme Court deemed it appropriate to review subsequent matters in the record to sustain the prior ruling. The same applies to service in this case. *See, e.g., United States v. Ayer*, 857 F.2d 881, 885 (1st Cir. 1988) (affirming finding of service after the court had "examined the record in this case with care").

Finally, even if the Supplemental Appendix documents were not in the record below – which they were – Qin's purposeful concealment of evidence constitutes "extraordinary circumstances" that warrant consideration of these documents. *See Colbert v. Potter*, 471 F.3d 158, 165-66 (D.C. Cir. 2006) (permitting record to be supplemented with a mail receipt that "goes to the heart of the contested issue" regarding the timeliness of an administrative claim); *In re AOV Indus.*, 797 F.2d 1004, 1012 (D.C. Cir. 1986) (noting exception to usual rule precluding new evidence

exists "when 'injustice might otherwise result'").[2] While part of the record below, the challenged materials are essentially impeachment evidence ensuring injustice does not result. Qin made numerous false claims in his Appeal, ranging from his unbelievable claim of forgery to his insistence that Petitioners never served him at a location identified in any Chinese court judgment. Petitioners should be permitted to impeach these false statements. According to Qin, there is *no* address that would be "reasonably calculated" to provide him constitutionally sufficient notice of the arbitration. Evidence demonstrating Qin's falsehoods should be considered to avoid such an absurd and unjust result.

In particular, Qin denies notice at three separate addresses in China, including his home, his registered address, the Divorce Decree address, and his address for judicial notice. In this Action, Qin denied notice at four separate addresses, including the addresses listed in his tax returns and the address where he was observed residing by private investigators. Having denied service or notice at seven separate addresses in the United States and China, Qin never identifies any location where he allegedly could be notified or served. Qin would have this Court conclude that no combination

---

[2] Qin's own cases state that documents otherwise not in the record may be considered if "extraordinary circumstances" exist. *Gorelik v. Gorelik*, 443 F. App'x 586, 587 (2d Cir. 2011); *see also Bahrami v. Ketabchi*, 365 F. App'x 266, 267 (2d Cir. 2010).

of service locations anywhere in the world can ever give Qin notice if he simply denies receiving it.

Finally, this Court is entitled to take judicial notice of these materials, to which Qin had ample opportunity to respond in this case. *See Dixon v. von Blanckensee*, 994 F.3d 95, 102-03 (2d Cir. 2021) (judicial notice of other proceeding in state court at which opposing party was present).

**D.     Qin Never Explains Why He Concealed Evidence From This Court**

Qin now apparently admits: CIETAC mailed service documents to him at the Building Address, 89 judgments identify this as his address, he identified it as his service address in the contract, his 2020 Divorce Decree identifies this as his address, Jiangtai Road is his "home" where he "picks up" his stuff, that his claim of forgery was false, and he was in China in 2019 (and lied when he claimed otherwise). Indeed, Qin testified (and brought a fraud counterclaim insisting) that he was living in China in 2019. Qin does not deny dodging service in this case, or falsely pretending not to receive notice, or using close contacts to falsely deny service, or dodging and denying service in a half-dozen cases.

Qin and his counsel should have never brought this appeal. But having done so, they had an obligation to inform the Court of these facts. Qin never revealed these facts to this Court or the District Court, and he made arguments based on false assertions and concealed evidence.

22

Qin now seeks to benefit from concealing evidence from this Court by striking evidence that disproves his falsehoods. Qin's attempt to do so should be rejected.

## III.    CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court deny Qin's Motion to Strike and grant Petitioners any further relief as may be appropriate.

DATED: November 13, 2023
New York, New York

Respectfully submitted,

By:      */s/ Geoffrey Sant*

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

Geoffrey Sant
Andrew C. Smith
31 West 52nd Street
New York, New York 10019
Tel: (212) 858-1000
Fax: (212) 858-1500
geoffey.sant@pillsburylaw.com
andrew.smith@pillsburylaw.com

*Attorneys for Petitioners Huzhou Chuangtai Rongyuan Investment Management Partnership, Huzhou Huihengying Equity Investment Partnership, and Huzhou Huirongsheng Equity Investment Partnership*

23

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.      This document complies with the type-volume limit of Local Rule 27(d)(2) because this document contains 5,195 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in font size 14, Times New Roman.

Dated: November 13, 2023
           New York, New York

                                        */s/ Andrew C. Smith*
                                        Andrew C. Smith

                                        *Attorneys for Petitioners Huzhou
                                        Chuangtai Rongyuan Investment
                                        Management Partnership, Huzhou
                                        Huihengying Equity Investment
                                        Partnership, and Huzhou
                                        Huirongsheng Equity Investment
                                        Partnership*